# CHESHIRE,

## JULY TERM, A. D. 1843.

13 321
68 383
13 321
69 549

## Henry *vs.* Sargeant & a.

This court has jurisdiction of an action to recover damages for assessing the plaintiff with an illegal tax, in another state, and issuing a warrant against him, upon which he was there arrested.

It is not a legal objection to such an action, that the defence may bring in question the regularity of the acts of the defendants, under the laws of such other state.

Selectmen, in the assessment of taxes, and in issuing their warrant for the collection of them, do not act as a court, and their decisions are not regarded as judgments, either in this state or in Vermont.

If they erroneously assess a tax, and issue a warrant for its collection, and thus interfere with the personal liberty of an individual, or his property, where they have no authority so to do, an action may be maintained against them by the party aggrieved.

Taxes in Vermont may be assessed upon a list, or invoice, made up and perfected at the time when the tax is voted. A tax, therefore, voted in March may be assessed upon the list of the previous year; the proceedings for the formation of a new list commencing on the first day of April, in each year.—Whether it could legally be assessed upon a list commenced after the tax was voted, *quere?*

Taxes are there assessed by the selectmen, upon a list made up by officers denominated listers. If there is any substantial error in the proceedings of the listers, rendering the list invalid, the selectmen who assess a tax upon it, and direct its collection, are answerable.

If the listers in any town do not make such alterations in their list as are required by the county convention of listers, or by the committee of the legislature appointed for the revision of the lists, according to the laws of that state, the list is imperfect, and does not furnish a legal basis for the assessment of a tax.

The form of the remedy is, in such case, to be regulated by the laws of the state where the action is brought, and the plaintiff has here an election to treat the wrongful assessment as the cause of the injury, and declare in case; or to regard an arrest by the collector as the act of the selectmen, and declare in trespass.

As to the measure of damages where a tax has been assessed against an individual liable to contribute, but upon a defective list or invoice, if the tax has been generally paid without objection by those liable to the taxation, *quere?*

Case, for an illegal assessment of a tax of $122.41, against

the plaintiff, on the 27th day of March, 1838, and for caus-- ing him to be arrested on the 25th day of April, 1839, by the collector of taxes for the town of Chester, in Vermont, and imprisoned for non-payment thereof, so that he was com- pelled to pay the same with costs, in order to procure his re- lease.

It appeared in evidence that the plaintiff was arrested by the collector and committed to jail, and that in order to pro- cure his release he paid the tax and costs.

To show that the tax was properly assessed, the defendants proved that they were selectmen of the town, and that at the annual meeting of the inhabitants of Chester, on the 5th day of March, 1838, it was voted to raise by tax six cents on each dollar of the list of Chester for the year 1837, for support of the poor, and other incidental charges, to be paid to the treas- urer on or before the first day of July next. They also pro- duced the grand list of Chester for that year, which appeared to have been filed in the office of the town-clerk on the 7th day of December, 1837; and showed that the amount against the name of the plaintiff, upon which the tax was to be rais- ed, was $2040.12, and that the tax of $122.41 was correctly cast thereon, at the rate of six per cent., in pursuance of the vote aforesaid.

By the law of Vermont the invoice is taken by the listers on the first day of April, in each year, and when completed by them is sent to the county convention of listers for their revision ; and after their action upon it is returned to the clerk's office, and then sent to the legislature for further re- vision ; after which it is returned, and a copy of the list, as amended, is to be filed by the listers in the clerk's office by the 10th day of December, then next.

Before the list was sent to the county convention, the num- ber of acres in Chester was estimated at 11450. The county convention ordered the number to be increased to 13000, and that there should be added to the appraisal of lands twenty-four per cent. on the amount.

The plaintiff contended that the order of the county convention had not been complied with,—that the addition of the twenty-four per cent. should appear upon inspection of the list in a separate column, whereas it appeared to have been made only from an examination of the list as originally made out, an addition of twenty-four per cent. to the amount, and a comparison of the result with the list as amended,— that in some cases the addition, as appeared from inspection, was not made at all, and that such omission rendered this tax void, whether the addition had been made in the case of the plaintiff or not.

The defendants introduced the testimony of the clerk of the town of Chester to show that the addition was made by the listers, to which the plaintiff objected, as being inadmissible to prove such fact.

In order to show that the list was sent to the legislature, the defendants proved by the clerk that the listers brought to him a blank, received by them from the legislature, which was to be filled up and returned,—that this blank was filled with the "footings" only, or summing up of the columns of the list, and he certified thereon the elections of the listers, and delivered the paper to the representative of the town of Chester before the 15th day of October,—that on the return of the representative he gave the witness a paper, (which he produced at the trial,) purporting to come from the legislature, relating to this list, but which made no alteration in the "town and county column," on which this tax was assessed,—that the paper sent by him was retained by the legislature. He testified that he did not know whether the proceedings of the county convention were or were not sent to the legislature by the listers, and that he had no records nor copies of records in his office from which he could determine whether the paper sent by him reached the legislature or not.

The plaintiff objected to the admission of parol evidence to show that the provisions of the laws of Vermont had been complied with.

It also appeared, that since the year 1832 no order of the county convention, making an addition to the list, has been applied to the column for highway taxes in the town of Chester, and that the addition was not made in this case.

It further appeared, that on the first day of April, 1837, the listers applied to the plaintiff, then a resident in Chester, for a list of his property,—that he gave them a list, and therein estimated his money at interest at $10.000, and that the listers raised that sum to $30.000. The laws of Vermont require that when the listers increase the amount of taxable property given in by any person upon his list, they shall notify him thereof, either verbally or in writing, before the 30th day of June, then next. The defendants offered evidence tending to show a verbal notice, and the question was submitted to the jury, by consent, whether such notice was or was not given before the 30th day of June, but they were unable to agree.

Upon a question respecting the residence of the plaintiff, they found that the plaintiff removed from Chester before the first day of April, 1838, with the intention of not returning to that place as his home, but that he did not so remove before the 5th day of March, 1838.

The plaintiff contended, that having ceased to reside at Chester before the first day of April, 1838, on which day the list is made out, he could not legally be taxed there. But the defendants argued that as this list was commenced on the first day of April, 1837, and could not by law be completed until the 10th day of December, 1837; and as the tax voted on the 5th day of March, 1838, was raised upon this list, it was immaterial whether the plaintiff did or did not remove from Chester before the first day of April, 1838 ; and that it was sufficient if he resided there on the 5th day of March, 1838, or on the first day of April, 1837.

The defendants objected, that the plaintiff had misconceived his remedy, and that the action should have been trespass and not case ; and that if any wrong had been done, the

remedy was not by suit against these defendants, but against the listers.

Judgment, by agreement of parties, was to be rendered for the plaintiff for the sum of $134.59, or for the defendants, according to the opinion of this court upon the foregoing case.

*Kellogg*, (of Vermont,) & *Handerson*, for the defendants.

I. It is apparent that the matter sought to be brought in controversy in the present suit is one which concerns the internal police of a foreign state, and it is believed to be well settled that the courts of another state will not take cognizance of such matters,—they will not interfere with them. 6 *Vermont R.* 102–110, *Pickering* vs. *Fisk ;* 9 *Vermont R.* 411–417, *Hunt & wife* vs. *Pownal.*

II. There are two classes of laws which are strictly local, and affect nothing more than they can reach and can be seized by virtue of their authority,—to wit, penal laws and revenue laws. These the courts of foreign states never notice. 1 *H. Blackstone* 135, *Folliott* vs. *Ogden ;* 14 *Johnson* 340, *Scoville* vs. *Canfield ;* 1 *Cowper* 343, *Holman* vs. *Johnson ;* 16 *E. C. L.* 166, *James* vs. *Catherwood ;* 1 *Johnson* 95, *Randall* vs. *Rensselaer.* In the above cases the judges repeat the *dictum* that " no court takes notice of the penal and revenue laws of another state." Now if no court will notice foreign penal or revenue laws for the purpose of enforcing them, surely they will not notice them for the purpose of reviewing decisions made and proceedings had under them. And it will not be pretended that the tax laws of Vermont can be enforced in New-Hampshire in any way. They act in *rem et personam*, and if the subject of action goes without the jurisdiction, the remedy is lost. It seems then to follow, as a necessary consequence, that what is done under them in the foreign jurisdiction, is not to be interfered with, provided it was within the jurisdiction, and that is admitted by the case, the action being brought against the defendants

in their official character, as selectmen, which in Vermont is in one respect that of revenue officers.

Again: As the proceedings are summary, and as the person neglecting to pay his taxes is a *delinquent*, (*Compiled Statutes* 402,) it is evident that the tax laws come under the class denominated *penal*, so that it is both a *penal* and a *revenue* law, and the action is to revise the regularity of proceedings under the *penal* and *revenue* laws of another state. This the court should never sanction. While they refuse their aid to enforce those laws, they will refrain from disturbing the procedings had under them.

Again: The penal and revenue laws form a part of the government of the state, with which no other state has a right to interfere. Persons who, by being citizens of a state, bring their persons or property within it, are subject to the laws made for the well government of the state, and if other states should take upon them to decide as to transactions within such state, whether the government was well administered, it would destroy the intercourse between the states.

III. If the plaintiff had a remedy for the injury of which he complains, and the courts of this state were competent to redress that injury, yet we insist he has mistaken his remedy. It should be trespass, and not case. They are never concurrent remedies. 2 *Vermont R.* 499–506, *Henry* vs. *Edson;* 10 *Vermont R.* 506, *Drew* vs. *Davis.* In this state, and in Massachusetts, selectmen perform all the duties that in Vermont are performed by two distinct boards, called listers and selectmen, each board having distinct duties to perform, and neither having any control over the other. And it may well be held in this state, and in Massachusetts, that where selectmen, acting as listers, (or as assessors,) commit errors, and as selectmen collect an erroneous tax by warrant, an individual injured by an erroneous assessment may have an action of case against the selectmen for their misdoings as assessors. But in Vermont it cannot be so, because the selectmen there do not act as assessors. If any action lies in Vermont for an

erroneous assessment, it must lie against the assessors, or listers, as they are there called. And the action must be in case, for the reason that they have no agency in issuing a warrant and collecting the tax. And it is equally clear that if any action lies against the selectmen, it must be in trespass, as they have no agency in preparing the list, and assessing the tax, but this is done by other and distinct officers.

IV. But it is insisted that the facts in the case, reported by the judge at *nisi prius,* furnish a full and perfect defence, at law, to the suit.

1. The town legally appointed their listers in March, 1837, who were legally qualified, and made and returned a list, which was at least *de facto* the list of the town for that year.

2. Henry, the plaintiff, was, on the 1st of April, 1837, a ratable inhabitant of Chester, and so continued until after the 5th of March, 1838, when the tax in question was voted, and consequently the subject matter of his list was within the jurisdiction of the listers. He gave in his list that year to the listers, and thereby admitted his liability to be listed, and consequently the jurisdiction of the listers. *Compiled Statutes* 400, *sect's* 1 *and* 2.

3. The town, at a legal meeting on the 5th of March, 1838, voted the tax in question, which they had power to do, (*Compiled Statutes* 413, *sec.* 14,) and which was correctly made up by the defendants upon the list of the town, and pursuant to the vote of the town, and could legally be collected within three years. 2 *Compiled Statutes* 86.

4. The tax was lawfully voted by the town upon the list of 1837. It was the only list *in esse* at the time. 4 *Vermont R.* 603, *Waters* vs. *Daines.*

5. The selectmen had no agency in making the list, or any control over it, or power to alter or amend it in the least, but it was their duty, upon the tax being voted by the town, to make out their rate bill upon the list of 1837, which

had been previously furnished and deposited in the clerk's office by the listers. 2 *Vermont R.* 499–506, *Henry* vs. *Edson.*

6. The selectmen being bound to make up the tax upon the list, if the list is defective they are not liable, the listers having jurisdiction of the subject matter of the list, and the town authority to vote the tax in question, upon the same principle that an officer is not liable if the court under which he acts has jurisdiction, though the proceedings be defective, because he is bound to obey the court. 2 *Saund. Pl. and Ev.* 235, [691.]

7. The plaintiff being listed on the 1st of April, 1837, was liable for all such taxes as should be voted by the town during the year, or until another list was perfected, whether he continued to reside in the town or not. 2 *Vermont R. Henry* vs. *Edson, ut supra.*

8. If the plaintiff has sustained an injury by reason of any misconduct of the listers in making the list, he must seek his redress from the listers, and not these defendants.

9. But it is believed that the list was correctly made up by the listers ; the additional per centage ordered by the county was added, as appears by the case.

If, however, errors are to be found in the list, it at most would amount to nothing more than an irregularity, which does not avoid the list. For the errors and irregularities of the listers, the selectmen cannot be held responsible, upon principle or authority.

*Hubbard, & Edwards, & Tracy* (of Vermont,) for the plaintiff.

1. The question whether this action is right in form must be settled by the adjudications in New-Hampshire ; but the validity of the list, and the plaintiff's right to recover, depend upon the laws of Vermont. Whether case is the proper remedy seems to be settled in *Gilson* vs. *Fisk*, 8 *N. H. Rep.* 404. That case is well supported, did it need any support,

by the decisions in *Branscomb* vs. *Bridges*, 1 *B. & C.* 145, and *Smith* vs. *Goodwin*, 2 *N. & M.* 114. If the injury is to be regarded as immediate, the plaintiff had a right to waive the trespass and go for his damages in this form of action. *Walker* vs. *Cochran & a.*, 8 *N. H. Rep.* 166.

2. The next question arising relates to the validity of the list of 1837. This list, it is insisted, is void, as it was not perfected when the tax was assessed, as required by the laws of Vermont. See the act of November 17, 1825, sect's 11, 16, 18. 2 *Compiled Laws* 75–78. It is apparent from an inspection of the list that the twenty-four per cent. has not been added in all cases to the column on which town taxes were raised, and it is admitted that it was not added in any case to the highway column. The consequence is that the list is inchoate. One entire list has not been made, as required by the 18th section. The statute is imperative that the alterations made by the county and state averaging committees shall be entered in the list; that is to say, that all additions or deductions shall be made as ordered. If these alterations can be omitted in one column, they may in all. The objection is that where the quantity of land, or the appraised value, is increased, the list is imperfect, and no tax can be assessed upon it, until the proper additions are made. Such was the decision of the supreme court of Vermont, in the case of *Henry* vs. *The Town of Chester*, decided in *Windsor County, February Term*, 1843, and this decision is fully supported by the cases of *Thames Man. Co.* vs. *Lathrop & al.*, 7 *Conn. R.* 550; *Thayer* vs. *Stearns*, 1 *Pick.* 482.

3. It is submitted that the court erred in admitting parol evidence to shew that the additions ordered by the county convention were made. This fact should appear upon the face of the list, and be determined from an inspection of it.

4. This list, so far as relates to the plaintiff, is void unless the listers gave him notice that they had increased his assessment for money at interest. The act of 1829 requires this

notice to be given, and it is of the utmost importance to the citizen that he should have it, as the 13th section of the listing law provides that when he is assessed for a greater sum than he thinks just, he may, by a given time, appear before the selectmen and make a disclosure, &c.    See 7 *Conn. R.* 550.

Some of the important objections to the plaintiff's right of recovery remain to be noticed.    It is insisted that this case relates to the internal police of Vermont, and that the courts of New-Hampshire ought not to entertain jurisdiction of the case.    On this point the defendant's counsel rely upon *Pickering* vs. *Fisk*, 6 *Vermont R.* 102, and *Hunt & al.* vs. *Pownal*, 9 *Vermont R.* 411.    The doctrine of the former case relates to the form of the remedy, and the remarks of the judge, in the latter, on this point, were not called for, as the question was not before the court.    This action is transitory, and although it arises out of transactions in Vermont, it may be sustained, if the proceedings relied upon by the defendants as a justification do not constitute a defence by the laws of that state.    *Mostyn* vs. *Fabrigas*, 1 *Cowp.* 161 ; *Doulson* vs. *Matthews*, 4 *T. R.* 503 ; *Cranstown* vs. *Johnston*, 3 *Ves.* 170 ; *Massie* vs. *Watts*, 6 *Cranch* 148 ; *Story's Confl. of Laws* 469, *sec.* 558 ; *Ditto* 506, *sec.* 607.    Again : If the defendants wished to avail themselves of this objection, should it not have been by way of plea to the jurisdiction of the court ?    Have they not, by pleading to the merits of the action, submitted to the jurisdiction of this court ?

The position is correct that this court will not enforce the penal laws of Vermont, but it has no application to the case at bar.    The law of a state, establishing a system of revenue, is in no sense a penal law ; but if it was so regarded it does not alter the plaintiff's rights.    His complaint is, that money has been drawn from him without law, and that the defendants are not protected by the statute under which they attempt to justify.

The objection that the listers are in fault, and that the de-

fendants have done their duty, is answered by saying that if the list is void, both the listers and defendants, as well as the collector, are liable to the plaintiff for the amount of his tax.

If the list is void, it is immaterial whether the plaintiff was or was not injured by adding the 24 per cent. to the list. But in point of fact this neglect of the listers increased his taxes.

PARKER, C. J.   The first question in this case is, whether the court have jurisdiction of the matter.

The action is an ordinary action of the case, alleging that the defendants, without right, made a certain assessment, or rate-bill, against the plaintiff, and placed the same in the hands of the collector of the town of Chester, with a warrant for its collection, and that he, afterwards, by virtue of the warrant, imprisoned the plaintiff until he paid the tax.

If the defendants were not authorized to assess taxes against any one, and they have usurped an authority to which they had no claim ; or, if the plaintiff was not an inhabitant of the town of Chester, and thus not liable to any taxes in that place ; there would seem to be no good reason why matters of that kind might not be as well proved here, as any other fact which took place within another state.

The action is in its nature transitory, and if the proof might be more conveniently made in another state, that is not a matter affecting the question of jurisdiction.   If the proof shows the plaintiff liable to a tax in Chester, where the defendants undertook to assess one, and shows, also, that the defendants had authority to make an assessment, an examination into the legality of their proceedings may doubtless involve the consideration of matters which could much more readily be settled by a tribunal more familiar with the laws of that state than we can be expected to be.   But that does not test the question of jurisdiction, or seem to change the result of the enquiry upon that question.   If we have jurisdiction to enquire whether the plaintiff was an inhabitant

of Chester, and whether the defendants were selectmen of that town, there seems to be nothing in the fact that they were so which ousts the jurisdiction of the court.    There is no principle of comity by which the acts of one who is a public officer cannot be enquired into in any other government than that in which he was appointed, and in which the acts were performed.

It is said that the court will not notice the penal laws, or the revenue laws, of another state.    But this principle is not applicable in this case, nor can it be true to that extent. There is no attempt to enforce the penal or revenue laws of Vermont by this action.    If there were, it would be held that this was not to be done through the instrumentality of the courts of another state ; as, for instance, if the attempt was to collect a tax assessed in Vermont by a suit here.    The case *Pickering* vs. *Fisk,* 6 *Vermont R.* 102, merely holds that a suit cannot be sustained in Vermont, upon an official bond given to the treasurer of New-Hampshire, for the purpose of enforcing rights which a third person might claim by the statutes of this state under such bond.    In that of *Hunt & ux.* vs. *Pownal,* 9 *Vermont R.* 411, an opinion is intimated that an action against a town, for an injury occasioned by a defect of a highway in another state, could not be sustained in the courts of that state.    But this case steers wide of any objection of that character.    The plaintiff seeks to enforce no right or claim arising under any revenue, police, or other statute of Vermont.    He alleges that the defendants illegally assessed a tax against him, and caused him to be imprisoned for non-payment.    It is, in substance, that the defendants, under some pretence of right which did not exist, were guilty of a personal wrong to him.    This is the character of an ordinary transitory action.

The defendants allege that they were lawfully authorized to assess a tax, and did so.    We must necessarily enquire whether they had any such authority.    If they had, unless their proceedings may be considered as the judgment of a

Henry *v*. Sargeant.

court, we must also enquire into their regularity, notwithstanding their regularity or irregularity depends upon the laws of another government.

To the judgments of courts of other states, when produced here to justify proceedings had under them in the jurisdiction where they were rendered, full faith and credit are to be given. *Story's Confl. of Laws* 500, § 598. But the principle does not seem to have been extended beyond this. We find no authority to show that the acts and doings of revenue or police officers of a state or nation, alleged to have been done by official authority, can be presumed to have been so done, and to have been warranted by the laws of the state or nation where the matter was transacted, and be, on such mere presumption, admitted as a justification of what would otherwise appear to be a personal wrong to a third person.

If the defence in this case set up the defendants as a court, and their proceedings, under which the plaintiff was arrested, as a judgment, the power under which they acted must be looked into, and their authority to decide upon the matters which they professed to decide, must be considered. We must in that case enquire whether they had a right to act as a court; whether the plaintiff was subject to their jurisdiction; and whether they had a right to render a judgment in such a matter; or, in other words, whether they had jurisdiction of the matter determined, and of the party or his property to be affected by the decision. *Story's Conflict*, 492, *&c.*

But the selectmen, in the assessment of taxes and in issuing their warrant for the collection of them, do not act as a court, and their acts are not regarded as judgments. This is so not only in this state, but it seems clear that it is so in Vermont. If they act erroneously, and assess a tax, or issue a warrant for its collection, and thus interfere with the personal liberty of an individual, or his property, where they have no authority so to do, an action may be maintained against them by the party aggrieved. Thus, where a tax

was assessed by the selectmen of a town, under a vote to raise money for an object not within its corporate powers, it was held that the tax was illegal and void, and the selectmen liable for the property distrained and sold in satisfaction of such tax.    10 *Vermont R.* 506, *Drew* vs. *Davis.*

The next question is, whether the plaintiff was liable to be taxed in the town of Chester, where these proceedings were had.    If he was not, no further enquiry is necessary, for in such case there can be no justification.

The case finds that the plaintiff removed from Chester sometime between the 5th of March, and the first of April, 1838.    The tax was voted on the former day.    A new invoice or list was made up in that year, after the latter.    The tax was assessed on the list of the previous year, and the enquiry therefore is, whether the money voted to be raised on the 5th of March, was by law to be assessed on the list made up in 1837, or whether it was to be assessed on the list to be made up subsequently, in the year in which the money was raised.    If the latter, as the plaintiff contends, there is no question that he was not liable to this assessment, and that the defendants could not lawfully issue a warrant against him.

It is to be regretted that upon the points in this case, which involve the construction of the statutes of Vermont, we have not the benefit of decisions of the courts of that state bearing so directly upon the questions before us, as to leave little room for mistake respecting the true construction of those statutes.    But the decisions of the supreme court of that state, although they do not cover the whole ground embraced in this case, may perhaps enable us to arrive at a conclusion, with a reasonable supposition that the result is the same as it would have been, had the matter been adjudicated in the courts of that state.

It appears from the statutes of Vermont, in force at the time when the transactions which form the subject matter of this case occurred, that a board of persons denominated listers

was to be annually chosen in each town, whose duty it was in each year to take an account of the personal property, and make certain assessments upon persons, and every fifth year to appraise the real estate in their respective towns taxable by law ; and in each year to make a list of all polls, and all property by them appraised or assessed, at a certain rate per cent., &c., with the name of the occupant and owner, &c., and lodge the same with the town-clerk of their respective towns on or before the twentieth day of June of the same year, for inspection. Provision was made for the correction of the lists, after which the listers were required, in each year, to make a general list of the polls and personal property, and return such list to the general assembly by the 15th day of October, of the same year. They were also required in every fifth year to make a general list of the real estate and property in their respective towns, with the appraisal, together with such assessments as they should have made on attorneys, physicians, &c., and made a like return thereof to the general assembly. There was a further provision for a meeting of listers in each county, once in five years, to "examine, average, and equalize the quantity of land, and the estimation and valuation of real estate, and also such assessments of any town, in such county, by adding thereto, or deducting therefrom, such number of acres, and rate per centum, as shall render the quantity of land, and the valuation and assessments of the several towns in such county, just and equitable, comparing one with the other ;" and they were to cause a certificate to be endorsed on the lists, describing the alterations made therein, which lists were also to be returned to the general assembly by the 15th of October. A committee of the general assembly were then to "examine the lists, and equalize the quantity of land, and the estimation and valuation of said property, together with said assessments, by adding to, or deducting from, the list of any county, such number of acres, and assessments, and such rate per centum, as shall render the estimation and valuation in the several coun-

ties just and equitable." These alterations were to be certified, and the lists returned to the listers in each town, and they were required to proceed and "finish their lists, by making the additions or deductions so made by the county and state average," and to make out and deliver to the town-clerks of their respective towns, on or before the tenth day of December, in each year, a particular list of the polls, &c., averaged and corrected, with occupant and owner's name annexed, &c. 2 *Vermont Compiled Laws* 73–79. Upon the list thus made up, the selectmen were required to assess the polls and ratable estates their just and equal proportion of all taxes. 1 *Compiled Laws* 416.

Although no direct decision is found in the reports of Vermont, upon the question on what list the money voted to be raised on the 5th of March, 1838, was by law to be assessed, the case *Waters* vs. *Daines*, 4 *Vermont Rep.* 601, seems to settle the principle which must govern the decision of it. That case related to a school tax, which was voted on the 15th of May, 1830, and was to be levied on the list of that year. It was not assessed within thirty days after it was voted, and was for that reason objected to, under a provision of the statute requiring such taxes to be assessed within thirty days after the vote raising the tax. Before touching upon this limitation, relating to the assessment of school taxes, Mr. Justice, (now Chief Justice,) Williams, referred to the law generally for the assessment of taxes, and said, "By the general law in relation to lists and listers, the lists are to be given in, in the month of April. After they are given in, the listers are to add assessments by the twentieth of June, and also the appraisal of the real estate in those years when such appraisal must be made, and to add two folds in the month of September, and the whole list is not to be completed until the 10th of December. Taxes are required to be apportioned on the list of the polls and ratable estate, and it seems to me it would be proper that all the taxes voted as granted in any one year should be laid on one list, and that one completed or perfected." And he adds, "It is very clear

Henry *v.* Sargeant.

that a vote to raise a tax on a list to be given in at any distance of time, would not be legal, as on a list to be made up one, two, or ten years thereafter. It is true, the decision of *Mountville* vs. *Houghton,* 7 *Conn.* 543, recognizes that a tax voted in November, 1823, on a list which was not, and could not be completed until August, 1824, was legal; but it seems to be founded on the usage or practice which had prevailed in that state, confirmed by a statute passed in 1826. Possibly there might be cases in which it would be better to lay the tax on the list which is making."

Although the question as to the right of towns to vote a tax on the list perfected, or on the list which is making between the first of April and the 10th of December, is not settled in that case, the provisions of the statute we have cited, and the remarks above quoted, lead to the conclusion that the tax of March 5, 1838, was rightfully to be assessed upon the list of 1837. The list of 1838 was not then commenced. It could not be completed until December following. If the town might have voted a tax to be assessed upon a list not begun, which certainly is doubtful if it be proper that all taxes be laid upon one completed, they did not do so, but voted it upon the list of 1837. Had they voted it on the list of 1838, it seems it could not have been assessed before a lapse of more than nine months, which surely could not have been intended. The law, requiring school taxes to be assessed in thirty days, is considered in the same opinion as conclusive that the tax cannot be voted on a list which is not to be completed until after thirty days from the voting of the tax. If what must be done in relation to a school tax, in this particular, may be done in relation to other taxes, that is sufficient upon this point of the case.

We are of opinion, therefore, that it was proper and legal, not to say necessary, that the tax voted in Chester in March, 1838, should be assessed on the list of 1837, as was done.*

---

* " A town cannot vote a tax upon any other list than the one in being and completed at the time of the vote." 16 *Verm. R.* 574, *Collamer* vs. *Drury.*

In relation to this subject, there seems to be an essential difference between the laws of Vermont, and those of this state, where taxes are voted at the annual meeting in March, to be assessed upon an invoice and list taken and made up in April following. But here the invoice is to be completed, and the taxes assessed, in the month of May.

The plaintiff having been regularly listed in Vermont in April, 1837, and remaining an inhabitant of Chester in March, 1838, when this tax was voted, was liable to be assessed there.

The tax having been assessed on the right list, there seems to be no further exception to the proceedings of the defendants themselves, as selectmen. But various exceptions are taken to the proceedings of the listers, in making up the list, before it came to the hands of the defendants as selectmen, as the basis upon which they were to assess a tax.

Upon this part of the case the plaintiff is met with the objection, that the defendants cannot be held liable on account of any errors in the list, or any erroneous proceedings of the listers.

Here again there is a difference in the laws and practice of the two states, which leads to embarrassment, and shows that it would have been better had the plaintiff sought his remedy in the courts of Vermont, where the statutes and their construction are familiar. We have here no separate boards known as listers. By the laws of this state, towns may choose assessors, who, when chosen, constitute, with the selectmen, a joint board for the assessment of taxes. But such officers are rarely chosen. The selectmen take the account of polls and ratable estates, and make up what is here usually denominated an invoice, but in Vermont is termed a list, and they then assess the taxes upon it, and deliver them to the collector, with a warrant for their collection. For errors in making up this invoice there is no question that they are answerable, being their own errors.

But they are answerable beyond that. If the proceedings

of a town upon which a tax is based are not warranted by law, the selectmen who assess the tax and issue the warrant are liable.

The principle, as we have already seen, seems to be the same in Vermont. 10 *Verm. R.* 506, *Drew* vs. *Davis, before cited.*

Perhaps the decisions holding selectmen responsible, where the proceedings of the town had been erroneous, were supposed to be necessary, in order to give a party, of whom an unlawful tax had been collected, a sufficient remedy, where there was no provision by statute giving an action against the town.

But the collector, also, has been held responsible for the validity of the tax, although he had no hand in making it, and very imperfect means, at least, of judging of the legality of the proceedings of the town, or selectmen. 4 *Verm. R.* 601, *before cited.* Such was the rule here, prior to the statute of June 16, 1836.

The principle which seems to have governed this class of cases very extensively, if not uniformly, when no statute provision existed modifying the liability, has been, that the officers who assessed and collected the tax were liable for any substantial errors in the previous proceedings, affecting the legality of the tax ; and this principle will hold the defendants answerable, not only for the regularity of the proceedings of the town, but also for those of the listers. And the case, *Thames Man. Co.* vs. *Lathrop*, 7 *Conn. Rep.* 550, seems to be a direct authority in this particular. The assessors in that state perform duties similar to those of the listers in Vermont, and in the case above cited did not leave an abstract of their assessments with the town-clerk by the 1st of December, as they should have done ; but it was left on the 20th of December. The defendants were selectmen, and procured a rate bill to be made out on the list of assessments, including a tax against the plaintiffs, obtained a warrant for the collection of the taxes, and delivered it to the collector with

directions to collect them. It was held they were liable, because the omission of the assessors had rendered the tax invalid. It was argued that they acted in pursuance of their duty, the law having imposed on them the burden of making out rate bills, and procuring warrants for the collection. But the chief justice said the true construction of the act in question was, that the selectmen were enjoined to make out rate bills on legal assessments, and if an assessment was illegal and void, it would be absurd to consider the law as requiring of the selectmen to cause a rate bill to be made upon it, and a warrant to be issued for its enforcement.

We have not been referred to any decisions in Vermont which seem to conflict with this view; and as the principles of the decisions there, so far as they go, seem to be in accordance with it, we are of opinion that if there was any substantial error in the proceedings of the listers, rendering the list invalid, the defendants who made the assessment, and directed the collection of the taxes, must be held answerable.

It is objected to the proceedings of the listers, that the county convention in 1837 ordered the number of acres in the list of Chester to be increased from 11450 to 13000, and that twenty-four per cent. should be added to the appraisal of lands. There was a controversy on the trial, whether this had been done, and respecting the nature of the evidence which was competent for this purpose. There was evidence from the town-clerk, in general terms, that the addition was made by the listers. The report of the clerk of this court, to whom the papers were submitted to report upon that subject, rendered it probable that it was not so in all cases in the assessment of this tax. But it is not necessary to consider this matter.

It appears affirmatively, that the order of the county convention, for the addition of twenty-four per cent., has not been applied to the column of highway taxes, and the plaintiff objects, that for this reason the list was not perfected

according to law, so that any taxes could lawfully be assessed upon it.

Although the tax now in question is not a highway tax, and seems therefore not to have been assessed upon the column where the omission has occurred, the objection appears to be fatal.

The particular form in which the list is to be made up and the alterations made, does not appear from the case ; nor why there should be a column in the list for the assessment of the highway taxes, and another for the assessment of other taxes. But it is sufficient that this error, in not adding the twenty-four per cent. as directed by the convention of listers for the county, is an error in making up and perfecting the list, and not merely an error in the assessment of the highway taxes, upon a list duly made.

There is, as we understand, but one list to be made for the assessment of all the taxes. To the valuation of that list, the convention of listers ordered an addition of twenty-four per cent. If this addition has been made to the part of the list upon which this tax was assessed, which it seems probable it has not in all cases, it has not been made to the column for highway taxes, in such a manner as to be applied to the assessment of those taxes, upon the list ; and for this reason the list has never been perfected according to the order of the convention of listers, and it has therefore never become a legal basis for the assessment of any tax.

We have been furnished with a copy of an opinion delivered by Mr. Justice Redfield, in a case between this plaintiff and the town of Chester, Windsor, February term, 1843, in which it is held that the list then in question " was not complete until the alterations required by the county and state committees were made. Until that time, it was merely in an inchoate state, so imperfect as no more to form the basis of any legal tax, than if had been returned at any former stage in its progress.* This seems decisive upon the point before us.

* See the case, 15 *Verm. R.* 460.

If we may understand, from the statement in the case before us, that the listers made no addition of the twenty-four per cent. to the list after its return, but that the selectmen attempted to add it in their assessment of all other taxes except highway taxes, and did not add it in making up the column containing those taxes, the result must be the same. The addition to the list, ordered by the county convention, would not in such case be made. There would be no attempt to make it by the listers, and the attempt to supply the defect by the selectmen, in relation to a part of the taxes, could in no sense be regarded as a perfection of the list, so that it could constitute a basis for the taxation in this case.

But the defendants object to the form of the plaintiff's action, and contend that if the assessment was void, and their warrant illegal, the action should have been trespass.

Whether the action should be trespass or case is a matter relating to the remedy, and is to be determined by the laws of this state.

The selectmen having no authority to assess a tax, and issue a warrant, for the want of a sufficient list trespass would well lie. But the plaintiff had an election to treat the wrongful assessment as the cause of the injury, and declare in case, or to regard an arrest by the collector as the act of the defendants, and declare in trespass. 8 *N. H. Rep.* 166, *Walker* vs. *Cochran; Ditto* 404, *Gilson* vs. *Fisk, and auth. cited.*

There might have been a question respecting the measure of damages, the plaintiff being an inhabitant of Chester, and liable to taxation there at the time the tax was voted; but we have no occasion to discuss that matter, the parties having agreed upon the amount for which the judgment should be rendered, in case the action is sustained. Whether the principle suggested in *Walker* vs. *Cochran,* and applied in *Cavis* vs. *Robertson,* 9 *N. H. Rep.* 524, is applicable to a case where there was no sufficient invoice, or list, on which to assess any tax, upon the ground that the party was liable to contribute his proportion of the money to be raised along with others

who perhaps have paid without objection, is a question which may be left for future adjudication, when a case shall arise requiring the decision of it.

*Judgment for the plaintiff.*