In the Matter of the Estate of ALICE C. MARTIN, Deceased.

Surrogate's Court, New York County, February 1, 1930.

Platt, Field & Taylor [*Eli J. Blair* and *Collier Platt* of counsel], for the executor.

*T. Ludlow Chrystie*, for the State of Connecticut.

*Seth T. Cole*, for the New York State Tax Commission, *amicus curiæ*.

FOLEY, S. In this accounting proceeding objections have been filed by the State of Connecticut for the general purpose of compelling payment by the executor out of the assets of the estate of the transfer tax claimed to be due to that State. The question involved is whether the power of the surrogate over the executor shall be used to enforce the collection of a transfer tax by a foreign State.

Under prior decisions it has been held that the revenue laws of a foreign State have no force in the State of New York, and that our courts cannot be employed in aid of the collection of foreign taxes. Such, in effect, was the determination of the Court of Appeals in *State of Colorado* v. *Harbeck* (232 N. Y. 71). Similarly, in my decision in *Matter of Bliss* (121 Misc. 773), I refused to direct the transmission of assets of the estate of a resident of Vermont to that State for the levying of a transfer tax under its laws.

It is claimed that the circumstances in this estate are substantially different from those in the authorities just cited. An analysis of the alleged reasons for differentiation leads to the conclusion that there is no difference in substance and that the objectant, the State of Connecticut, is not entitled to the relief sought. It is undisputed that the domicile of the testatrix was in the State of Connecticut. She died on October 3, 1928. She left tangible and intangible property in that State. She also left property in the State of New York. Her will was admitted in an original probate proceeding in the Surrogate's Court of New York county. No original or ancillary probate proceedings were taken by the executor in Connecticut. Indeed, no such action was necessary because shortly after the death of the decedent the tangible property in Connecticut was removed from that State to the State of New York,

and the account in a savings bank there was likewise withdrawn and received by the executor. The latter has paid the transfer tax due New York.

No transfer tax proceeding was begun by the executor in the State of Connecticut. Under the law of that State the tax is made a lien upon the property. Its statutory procedure is somewhat different from our own. The personal representative of the estate is required to file an inventory of the property. The filing of the inventory seems to be a condition precedent to the assessment of the tax. In the course of time, in an attempt to meet the situation created by the refusal of the executor to act, there was appointed an administrator c. t. a. in the Court of Probate, Ridgefield, Conn. The person named was a nominee of the tax authorities of that State. It is conceded that no assets of the estate have come within his control. It should be noted also that all of the legatees of the estate are residents of this State and no demand is made in the proceeding before me by any person interested as beneficiary or creditor for the transmissal of the assets to Connecticut. Under these circumstances, if the demand of Connecticut was granted, the estate would be depleted, without advantage to the distributees, by the expense of the secondary administration in that State. Entirely aside from the basic element of public policy involved in this application, no reason exists, therefore, requiring the exercise of the discretion of the surrogate for the return of any of the property to the domiciliary State.

Connecticut claims, however, that the public policy of New York and the law of the *Harbeck* and *Bliss* cases have been fundamentally changed by the adoption of the reciprocity provision in our Tax Law (§ 248-p).* That statute was enacted by our Legislature in 1925, and in the same year Connecticut adopted a similar statutory provision. The purpose of this reciprocal legislation is laudable. It prevents, as between the co-operating States, the imposition of multiple taxes, and avoids the necessity of conducting, in the estate of a New York resident, transfer tax proceedings in States having reciprocal statutes. It appears that thirty-nine different jurisdictions, including many States of the Union, are within the reciprocal group. Multiple taxation has been abolished and the need of reciprocal legislation has now been avoided by the sweeping decision of the United States Supreme Court, rendered January 6, 1930, in the case of *Farmers Loan & Trust Co.* v. *Minnesota* (280 U. S. 204). That decision specifically overruled *Blackstone* v. *Miller* (188 U. S. 189) and held that the transfer of property (other than tangible personal property and real property) cannot be taxed

---

* Added by Laws of 1925, chap. 143, as amd.

by a State against the estate of a non-resident. In other words, the succession to or transfer of intangible personal property, regardless of its actual situs, can now only be taxed validly in the State of domicile. But, in my opinion, the enactment of the reciprocal provision of our Tax Law did not change the rule of public policy laid down in the *Harbeck* case, that our courts cannot be used for the collection of foreign taxes. It was claimed in the *Harbeck* case that the Attorney-General of the State of Colorado was authorized by its statute to enforce the collection of its tax by common-law action in this State. Judge POUND in his opinion pointed out that this contention was unsound. He thereupon clearly defined the public policy of our State as follows: " The attempt to give such a statutory provision extraterritorial effect would conflict with another well-settled principle of private international law which precludes one State from acting as a collector of taxes for a sister state and from enforcing its penal or revenue laws as such. The rule is universally recognized that the revenue laws of one State have no force in another. The remedy is a part of the law, and we are once more brought to face the doctrine that the taxing power of the state is by the Federal Constitution limited to persons and property within its jurisdiction." (Citing *Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 265; *Marshall* v. *Sherman*, 148 N. Y. 9, pp. 24–26; *Loucks* v. *Standard Oil Co.*, 224 id. 99, p. 102; *Walker* v. *Treasurer, etc.*, 221 Mass. 600; *City of N. Y.* v. *McLean*, 170 N. Y. 374, 387, 388.) The abolition of this rule by the Legislature should not be spelled out by implication from the enactment in 1925 of a mere reciprocity provision. Nor should such a far-reaching change of law be established by judicial decision. If the Legislature had intended to change the public policy of our State, its purpose would have been expressed in a clear, unequivocal mandate. Reciprocal taxing methods were intended to be created. There the Legislature stopped. The statute is silent upon any recognition of a new system by which our courts shall become the tax collection agencies of other States. The wisdom of such a change of policy is for the Legislature after due consideration of the benefits that it may give to an association of States interested in reciprocal tax legislation as against the initiation of a system which would open our courts to burdensome actions and proceedings intended to levy foreign taxes of every form, oppressive or otherwise, upon our citizens, their property and their estates. It would appear also that the validity of such a statute might be questionable.

The contention of counsel that the form of the relief asked for here is not an attempt to enforce the revenue laws of Connecticut must be overruled. It is immaterial that the foreign State does not

ask for direct payment of its tax from the executor. The only purpose of this application is to compel the executor to begin transfer tax proceedings in Connecticut or to return the assets or proceeds of the assets to that State so that the tax may ultimately be collected. I pointed out in the *Bliss* case that what I was asked to do under the same circumstances was to quiet all question of the foreign State to levy a tax by giving it actual control of the property within its borders. It is immaterial also in this situation that the law of Connecticut declares the tax to be a lien upon the property. It may be such within that State, but its enforcibility ceases when the property crosses its border. The decision in *Goodrich* v. *Rochester Trust & Safe Deposit Company* (173 App. Div. 577) is not authority for the objectant's contention. That case simply involved the right to reimbursement of an ancillary administrator in Michigan for payment of a tax assessed in that State out of the estate assets located here. The controversy was not between the foreign State and the executor or administrator. The tax had been duly levied in the foreign State and the Appellate Division held that the beneficiaries of the transfer of the property, rather than the administrator, should in justice bear the burden of the tax. The statement of the court, however, that the " statute of Michigan could not operate beyond the borders of that State to fix a personal liability upon an executor in this State " is pertinent to the conclusion reached by me. The objections of the State of Connecticut are dismissed and its petition for permission to transmit the assets is denied. Submit decree on notice settling the account and directing distribution of the estate.