CITY OF DETROIT, a Municipal Corporation of the State of Michigan, and ALBERT E. COBO, Treasurer of the City of Detroit, a Municipal Corporation of the State of Michigan, v. ERNEST W. PROCTOR.

*(August* 23, 1948.)

CAREY, J., sitting.

*Isaac D. Short, II,* for plaintiffs.

*Daniel J. Layton, Jr.,* and *William Poole* and *Henry van der Goes* (of the firm of Southerland, Berl and Potter) for defendant.

Superior Court for Sussex County, No. 24, April Term, 1947.

CAREY, J.:

The important question to be decided is whether an action may be brought in Delaware to enforce the revenue laws of another State or political subdivision thereof. It is not alleged that a judgment was ever obtained in Michigan against the defendant for these taxes and this case is, therefore, not governed by the decision in *Milwaukee County*

*v. M. E. White Co.,* 296 *U.S.* 268, 56 *S. Ct.* 229, 80 *L. Ed.* 220, in which it was held that a judgment is not to be denied full faith and credit in State and Federal Courts merely because it is for taxes. In that case, the Supreme Court expressly refused to pass upon the precise point involved in the present action, saying that the question whether one state must enforce the revenue laws of another remains undecided by that Court.

As a further preliminary statement, it is well to point out that I am assuming, without deciding, the propriety of bringing this suit in the name of the City of Detroit and its Treasurer. I am also assuming, although the narr does not expressly so state, that the Michigan statutes authorize the suit to be brought in a foreign jurisdiction. These points, discussed by the Supreme Court in *Moore v. Mitchell,* 281 *U.S.* 18, 50 *S. Ct.* 175, 74 *L. Ed.* 673, have not been argued before me and I express no opinion as to their materiality.

It has been said to be a principle universally recognized that the revenue laws of one country have no force in another. *Maryland v. Turner,* 75 *Misc.* 9, 132 *N.Y.S.* 173. See also *Restatement of Conflict of Laws Sec.* 610c. The rule apparently was never questioned until the United States Supreme Court in *Milwaukee County v. M. E. White Co., supra,* threw some doubt upon it. It is true that North Carolina allowed a recovery of taxes due under the statutes of another state in *Holshouser Co. v. Gold Hill Copper Co.,* 138 *N.C.* 248, 50 *S.E.* 650, 70 *L.R.A.* 183, but in doing so, the Court did not even mention, much less decide, the point herein raised, the only question it did decide being a matter of priority of these taxes over other creditors of an insolvent foreign corporation. Indeed, the only Court which has definitely refused to accept the above mentioned "universally recognized" principle is the St. Louis Court of Appeals

of Missouri in *State ex rel. Oklahoma Tax Commission v. Rodgers*, 238 *Mo. App* 1115, 193 *S.W.* 2d 919, 165 *A.L.R.* 785. That case is deserving of some attention because of its severe criticism of the rule which other Courts had applied without dissent. Before passing to a consideration of it, I shall briefly review the origin and development of the rule.

It is said that Lord Hardwicke, in *Boucher v. Lawson*, (1734) 95 *Eng. Reprint* 53, was the first Judge to apply the rule "that one state will not enforce revenue laws of another". The suit was not to recover taxes but was an action against the owner of a vessel for the value of a cargo. The defendant relied upon a law of Portugal from which the cargo of gold had been shipped making it a crime to export gold from Portugal. The Court refused to recognize this difference, holding that the law was a revenue measure which would not be enforced by the English Court. The principal reason for the holding was that it would cut off the benefit of trade from England which would be of grave consequences to that country.

In two somewhat similar instances Lord Mansfield applied the same rule. *Holman v. Johnson*, (1775) 98 *Eng. Reprint* 1120; *Planche v. Fletcher*, (1779) 99 *Eng. Reprint* 164. Those authorities were again followed in *James v. Catherwood*, (1823) 3 *Dow & Ry.* 190; and *Sharp v. Taylor*, (1848) 41 *Eng. Reprint* 1153. In all those cases, the question presented was whether an otherwise valid contract was enforcible in England when it violated the revenue laws of another country.

The earliest case in the United States is *Ludlow v. Van Rensselaer*, (1806) 1 *Johns* (*N. Y.*) 94, where the facts and holding were similar to those of the English cases above cited. In 1843, in *Henry v. Sargeant*, 13 *N.H.* 321, 40 *Am. Dec.* 146, the New Hampshire Courts, purely by way of

obiter, said that it would not honor a suit to collect a tax assessed in Vermont.

Since then a number of New York cases and at least one English case have followed this same principle. *State of Colorado v. Harbeck*, 232 *N.Y.* 71, 133 *N.E.* 357; *In re Martin's Estate*, 136 *Misc.* 51, 240 *N.Y.S.* 393; *Maryland v. Turner*, 75 *Misc.* 9, 132 *N.Y.S.* 173; *In re Bliss' Estate*, 121 *Misc.* 773, 202 *N.Y.S.* 185; *Sydney v. Bull*, 1 *K.B.* 7. See also *Gulledge Bros. Lumber Co. v. Wenatchee Land Co.*, 122 *Minn.* 266, 142 *N.W.* 305, 46 *L.R.A.* (*N.S.*) 697; *Canada v. Schulze*, 9 *Scotch L.T.* 4; *Reg. v. Drukker*, (1928) 1 *Ch.*, *Eng.*, 877. It is interesting to note that the case of *Sydney v. Bull*, *supra*, was an attempt to collect the amount of an assessment levied by a municipality of New South Wales and the Court said: "The action is in the nature of an action for a penalty or to recover a tax; it is analogous to an action brought in one country to enforce the revenue laws of another. In such cases it has always been held that an action will not lie outside the confines of the last-mentioned state".

Strangely enough, no case prior to State of *Colorado v. Harbeck*, *supra*, discusses the reasons for refusing to permit actions for the recovery of foreign taxes. Even in that case, the highest Court of New York did not enter into a very full discussion of those reasons but contented itself with a refutation of certain arguments advanced by counsel for Colorado. Among other things, it was said that (1) taxes are not debts or contracts and no contractual or quasi-contractual obligation to pay arises out of the assessment thereof; (2) the enforcement of revenue laws rests not on consent but on force and authority; (3) the revenue laws of one state have no force in another; and (4) a state is precluded from action as a collector of taxes for a

sister state and from enforcing its penal or revenue laws as such.

I now pass to the case of *Moore v. Mitchell*, (2 *Cir.*) 30 *F.* 2d 600, 65 *A.L.R.* 1354, affirmed by the Supreme Court on other grounds, 281 *U.S.* 18, 50 *S. Ct.* 175, 74 *L. Ed.* 673. This was an attempt to enforce a revenue law of Indiana in the District Court of the United States for the Southern District of New York, 28 *F.* 2d 997. The District Court dismissed the action and the Circuit Court of Appeals affirmed. The opinion of Judge Manton, in which Judge Augustus Hand concurred, follows very closely the reasoning of State of *Colorado v. Harbeck, supra.* The concurring opinion of Judge Learned Hand merits quotation,

"Generally it is, of course, true that a liability arising under the law of a foreign state will be recognized by the courts of another, and it is not here relevant whether foreign liability is enforced, or another, precisely similar, raised by the law of the forum. A recognized exception is in the case of criminal and penal liabilities. The Antelope, 10 *Wheat.* 66, 123, 6 *L. Ed.* 268, [282]; [State of] *Wisconsin v. Pelican Ins. Co.*, 127 *U.S.* 265, 8 *S. Ct.* 1370, 32 *L. Ed.* 239; *Huntington v. Attrill*, 146 *U.S.* 657, 13 *S. Ct.* 224, 36 *L. Ed.* 1123; *Huntington v. Attrill* [1893] *A.C.* 150; [State of] *Arkansas v. Bowen*, 3 *App. D.C.* 537; *Dicey, Conflict of Laws, rule* 54. In some few cases, this exception has been extended to include revenue laws as well. [State of] *Colorado v. Harbeck*, 232 *N.Y.* 71, 133 *N.E.* 357; *Sydney v. Bull* [1909] 1 *K.B.* 7; *Gulledge Bros. Lumber Co. v. Wenatchee Land Co.*, 122 *Minn.* 266, 142 *N.W.* 305, 46 *L.R.A.,N.S.*, 697; *Canada v. Schulze*, 9 *Scotch L.T.* 4. But so far as I can find the point has never been passed on by a federal court.

"While the origin of the exception in the case of penal liabilities does not appear in the books, a sound basis for

it exists, in my judgment, which includes liabilities for taxes as well. Even in the case of ordinary municipal liabilities, a court will not recognize those arising in a foreign state, if they run counter to the 'settled public policy' of its own. Thus a scrutiny of the liability is necessarily always in reserve, and the possibility that it will be found not to accord with the policy of the domestic state. This is not a troublesome or delicate inquiry when the question arises between private persons, but it takes on quite another face when it concerns the relations between the foreign state and its own citizens or even those who may be temporarily within its borders. To pass upon the provisions for the public order of another state is, or at any rate should be, beyond the powers of a court; it involves the relations between the states themselves, with which courts are incompetent to deal, and which are intrusted to other authorities. It may commit the domestic state to a position which ·would seriously embarrass its neighbor. Revenue laws fall within the same reasoning; they affect a state in matters as vital to its existence as its criminal laws. No court ought to undertake an inquiry which it cannot prosecute without determining whether those laws are consonant with its own notions of what is proper".

Speaking of this case, Prof. Beale has this to say in Vol. 3 Conflict of Laws 1638 [30 F. 2d 603] : "It is undoubtedly true that in many instances the courts have repeated the rule without careful consideration and merely as a literary corollary to the proposition that no state will enforce the penal laws of another state. Nevertheless it is not difficult to find fundamental considerations which seem to furnish ample justification for the refusal to allow the action. As Judge Learned Hand pointed out, the relation between a foreign state and its citizens is properly no concern of the forum. Furthermore since the interest of the foreign state is directly affected, the interstate relation

should be determined not by the court but by the respective sovereign powers. Also the court may well feel very reluctant to assume the burden of administering an intricate tax system with which it is totally unacquainted, especially in view of the crowded dockets which are to be found almost everywhere".

This reasoning was severely criticised in *State ex rel. Oklahoma Tax Commission v. Rodgers, supra.* Suit was brought in Missouri to recover an income tax imposed by Oklahoma against the respondents while they were residents of the latter state. The Lower Court dismissed the action on the ground that the Courts of Missouri will not entertain suits to enforce the revenue laws of a sister state. The Appellate Court, after conceding that the weight of authority supported the ruling of the trial Court, proceeded to inquire into the reasons given in support of the majority rule. It held that revenue laws are intrinsically different from penal laws and that a suit to recover taxes should not be precluded unless the same considerations which bar the enforcement of foreign penal laws are also applicable to taxing statutes. In answering the various arguments advanced on behalf of the respondents, the Court made the following rulings: (1) it cannot be considered an unwarranted interference with the prerogatives of the foreign state to entertain such a suit when that state is the party asking for relief and undertakes to submit itself to the local jurisdiction; (2) any possibility of interstate complications arising out of the enforcement of a taxing statute is so insignificant that it can be disregarded; (3) in the instant case, no procedural difficulties existed; (4) tax laws are not punitive in nature; (5) Missouri has no local public policy opposed to the imposition of an income tax; (6) any possible inconvenience to the defendant in conducting his defense outside the jurisdiction where the cause of action arose does not ordinarily constitute a ground for denying

relief; (7) the expense to the enforcing state of conducting the trial and enforcing a judgment is not sufficient ground for denying relief; (8) comity demands the honoring of the tax laws of a sister state, since a taxpayer, who enjoys the protection of Government should bear his share of the expense of maintaining the Government, and should not be permitted to escape his obligation by crossing state lines. In reaching its conclusions, the Court quoted at length from Mr. Justice Stone's opinion in *Milwaukee County v. M. E. White Co., supra,* chiefly for the apparent purpose of pointing out the difference between penal statutes and tax statutes, since it was there held that taxing statutes impose a liability which is quasi-contractual in nature.

I must decline to follow the Rodgers case. Fundamentally, I cannot agree that a tax liability is quasi-contractual. It may be true that a tax is not a penalty, but that does not necessarily mean it is a quasi-contract. See 51 *Am. Jur.* 40. In *Boyd v. Dillman,* 9 *W. W. Harr.* 231, 197 *A.* 830, 834, this Court spoke as follows: "Generally speaking, a tax is an impost levied for the support of the government, or for some special purpose, or by some agency having certain governmental functions delegated to it, such as a municipal corporation. It is not based on a contract, either express or implied, as the consent of the taxpayer is not necessary for its collection."

Moreover, the opinion of the Missouri Court seems to ignore the fact that Michigan's sovereignity is as foreign to Delaware as Russia's. Those practical reasons which militate in favor of enforcing taxes for another State of the Union are not very potent when applied to actions by a foreign country. But if we open our Courts to one, can we logically close them to the other, in the absence of express constitutional or statutory authority?

It is not suggested that the full faith and credit

clause of the Federal Constitution, Article 4, § 1, is applicable to this kind of suit and, as indicated above, the Federal Supreme Court has not as yet said so. Only upon the basis of comity is the Court urged to take jurisdiction. Every Court, except in Missouri, which has actually considered the question has ruled that comity is an insufficient reason for accepting jurisdiction. See cases cited supra and 165 *A.L.R.* 796; *County Treasurer of Hamilton County, Ohio, v. Hartzell,* 55 *Pa. Dist. & Co. R.* 100; *State of Ohio v. Flower,* 59 *Pa. Dist. & Co. R.* 14. No statute in Delaware covers the situation and, in the light of the overwhelming weight of authority, this Court should not take the drastic step of accepting jurisdiction without an express mandate from those authorities which are entrusted with the power of handling interstate relations. The matter of adopting the so-called "enlightened" rule as the public policy of this State ought to be left to the determination of the law-making body, which can confine it within desirable bounds.

The second ground for demurrer, which involves a question of pleading, need not be decided, in view of the foregoing conclusion. The demurrer will be sustained upon the substantive point.