Osgood *v.* Blake.

## OSGOOD *v.* BLAKE & a.

Where the statute required that notice of a town-meeting should be given by posting up two copies of the warrant, one at the place of meeting and one at some other public place, fifteen days before the day of meeting; and a general provision of the statute of the State provided, that when time is to be reckoned from any day, date, act done, or the time of any act done, such day, date, or the day when such act is done, shall not be included in such computation. *Held*, that a copy of the warrant, posted up on the Monday, two weeks before the Tuesday on which the meeting was to be held, was not in season.

Where one of the copies of such warrant was posted on the inside of the door where the meeting was to be held, and the door was then locked and kept locked until the day of the meeting. *Held*, that such a posting was not a compliance with the spirit of the statute, and that the notice was insufficient.

A tax, to defray town charges and expenses, voted at a meeting held in pursuance of such deficient notices, is illegal, and does not come within the provisions of law as an abatable tax; and if a person's property is taken, or his body arrested, to collect the same, he may bring his action therefor against the selectmen. In such action, trespass is a proper form of remedy. The statute requiring that an action on the case only shall be brought under certain circumstances, does not apply to a case of this kind.

A warrant for the collection of taxes, issued by a competent board of selectmen, containing separate and distinct assessments, some of which are legal and some illegal, may be good for the legal assessments and bad for the illegal ones.

Osgood *v.* Blake.

But where a person is arrested and detained till he pays all of the assessments, it is no defence to an action brought therefor, that the warrant contained some assessments that were legal.

On a trial before a jury, such legal assessments might be given in evidence in reduction of damages ; but where the parties agree that, in case the Court are of opinion that the defendants are liable for more than nominal damages, . judgment shall be entered for a specified sum, the Court will order judgment according to the agreement.

TRESPASS, for an assault and false imprisonment alleged to have been committed on the 27th day of November, 1846.

Each defendant severally pleaded the general issue, with a brief statement, that the defendants were selectmen of Raymond in said county for the year 1844 ; that the plaintiff was then, long before, and ever since had been, an inhabitant of said Raymond, and liable to be taxed as such ; that they legally assessed against the plaintiff, taxes for that year amounting to the sum of $15.58, and committed their list of taxes for that year, duly made, including the said tax assessed against the plaintiff, by their warrant in due form of law, to James Welch, collector of taxes for said Raymond for that year, and said Welch, having given due notice to the plaintiff, and the plaintiff neglecting to pay the said tax, by virtue of said warrant legally arrested the plaintiff on said 27th day of November, for the non-payment of said tax ; whereupon the plaintiff paid to him the said sum of $15.58, and eighty-three cents more for said Welch's legal costs upon said warrant, being in all the sum of $16.41, and was thereupon discharged, which is the same trespass, assault and imprisonment, and payment of money by said plaintiff, in said declaration alleged.

The annual town meeting in said Raymond, for the year 1844, was warned by posting up a copy of the warrant of the selectmen calling the meeting, on the inside of the door of the meeting-house where the meeting was to be held, and the door was then locked and kept locked until the day of the meeting, and another copy of said warrant was posted up at Blake's tavern in said Raymond ; which copies were posted up, as aforesaid, on the Monday two weeks before the day of the meeting, which was on Tuesday.   A meeting was held at said meeting-house, in said

Raymond, pursuant to said warrant, on the second Tuesday of March, 1844, at which meeting the said defendants were chosen selectmen of Raymond, and James Welch collector ; and it was voted to raise the sum necessary to defray the charges and expenses of the town, specifying the State and county taxes which the town was ordered to raise, and the school tax which they were required by law to raise, and the ordinary expenses of the town. The defendants were sworn, and acted as select-men for that year, and assessed upon the polls and ratable estate of the inhabitants of said Raymond the sum thus voted to be raised, and assessed against the plaintiff, who was, on the 1st day of April, 1844, an inhabitant of said Raymond, and liable to be taxed therein, the sum of $15.58, which was no more than his proportion of the State, county, and school taxes, ordered and required to be raised, and of the said town taxes as voted at said meeting. Two of said defendants, Blake and Batchelder, were duly elected selectmen of Raymond, and acted as such for the year ending March, 1844. The said Welch called on the plaintiff to pay said tax assessed against him, and upon his re-fusing to pay the same, arrested him by virtue of said warrant, and detained him until he paid the said tax and costs, the whole amounting to $16.41.

The plaintiff contends, that the town meeting at which the defendants were chosen selectmen, and the said Welch collector, and the money, to pay which the tax was assessed, was voted to be raised, was illegal, and its proceedings void, because it was not properly warned as required by law, and that the proceed-ings of the defendants in assuming to act as selectmen in assess-ing the taxes and committing them with their warrant to said Welch for collection, were illegal and void, and gave to said Welch no authority in law to collect said taxes, or to arrest the plaintiff for the non-payment of the tax assessed against him.

The foregoing statement of the pleadings and facts was agreed to by the parties. They also agreed that judgment should be rendered for the plaintiff, for the sum of $16.41 and interest, or for nominal damages ; or for the defendants, according to the opinion of this court upon the whole case.

*French*, for the defendants.

1. We contend, that the defendants were selectmen of Raymond, both *de facto* and *de jure*, for the year 1844, and had authority to assess a tax upon the plaintiff, and issue their warrant for its collection. The case finds that two of the defendants were selectmen in 1843, and by § 6, ch. 34, Rev. Stat. they continued in office until others were chosen and sworn in their stead. They were then selectmen, either by virtue of their election of 1843 or 1844, for the court will construe the statute so that no vacancy can occur for want of a valid election. The act of *two* selectmen is sufficient. "A majority of the selectmen shall be competent to act in all cases." Rev. Stat. ch. 34, § 2. And the signature of the third defendant does not render it illegal, nor make him a trespasser, if he were not a selectman. The collector would act under legal authority from the others, and the signature of the third would be immaterial. *Hayes* v. *Hanson*, 12 N. H. Rep. 284.

The defendants, then, had legal power to issue a warrant, and whether the annual meeting was legal or not, to assess the State, county, and school taxes. Rev. Stat. ch. 43, § 3; Stat. of 1848, p. 313; 3 N. H. Rep. 19. And the warrant distinguishing in the usual form between the taxes assessed by order of the State and county, and of the town, and by statute for schools, was a valid authority *pro tanto*. It would justify a distress or arrest, and a detention of the property or person, until payment of the taxes legally assessed. It may be regarded as several warrants to collect the several taxes respectively. *Brackett* v. *Whidden*, 3 N. H. Rep. 20. It is enough for our present argument, however, that the defendants were selectmen, and had authority to assess taxes, and that the plaintiff, as is admitted, was a taxable citizen of the town.

2. We contend, that the plaintiff's only remedy was by an application for an abatement. "Selectmen, for good cause shown, may abate any tax assessed by them or their predecessors." Rev. Stat. ch. 44, § 1. By section two, the Court of Common Pleas, on neglect or refusal of the selectmen, are authorized to make such order thereon as justice may require.

46*

The principle is well established, that where a new right is created by statute, which at the same time gives a remedy for an infringement of it, that remedy must be pursued. Various illustrations of this principle may be found. *Gedney* v. *Inhabitants of Tewksbury*, 3 Mass. 309; *Andover and Medf. T. Corp.* v. *Gould*, 6 Mass. 40; 1 N. H. Rep. 339; 4 Ib. 527.

In *Osborn* v. *Danvers*, 6 Pick. 98, the principle was applied to a case parallel to the case at bar. By a statute of Massachusetts it was provided that, whenever a person should be overrated in the assessment of any tax, he might apply to the assessors to make a reasonable abatement, and if they refused, complaint was to be made to the Court of General Sessions, who were authorized to relieve him, and it was held that this was his only remedy. The principle of the Massachusetts cases was fully recognized in the opinion of Chief Justice *Parker* in *Walker* v. *Cochran & a.* 8 N. H. Rep. 169. The statute of New Hampshire in force when that case arose, provided that when the selectmen should have overvalued property, they might abate, &c. Judge *Parker* says, " The remedy there (in Massachusetts) for *overrating*, is similar to that in this State for *overvaluation*," and he proceeds to show that " the power of the Court of Common Pleas to abate, does not extend to all cases where an individual is overrated," and his opinion clearly turns upon the limited extent of the powers of the selectmen and of the court to abate. He further says, " Since this tax was assessed, a different mode of taking the invoice has been adopted, and the authority of the Common Pleas to abate, perhaps thereby extended." His reasoning in that case is based upon the assumption that, if the statute remedy by abatement were applicable, no other remedy could be open to the plaintiff.

By the Revised Statutes, which constitute but one act, the remedy by abatement of taxes was extended. The selectmen were authorized to abate *any* tax, and, as is remarked by one of the committee engaged in the revision, " the power of the court seems to be as broad as that of the selectmen." Fox's Town Officer, p. 90. The same statute then, which creates the authority of the selectmen in the assessment of taxes, provides an adequate equitable remedy for any error in its exercise.

Osgood *v.* Blake.

The plaintiff here could at most recover but nominal damages, were the action sustainable, for he is admitted to have been a taxable citizen of Raymond and to have paid but his fair proportion of the public expenses. 9 N. H. Rep. 524 ; 13 Ib. 342, 343. And the court will not be disposed to enlarge the technical right of parties to maintain frivolous suits where a competent tribunal is vested with authority to " make such order " in relation to the subject of their complaint " as justice may require." Indeed the intention of the Legislature is manifest, by the alteration of the statute at the revision. The decision of *Walker* v. *Cochran,* was made in 1836, and the statute of 1827 was seen to be entirely inadequate to protect selectmen or to give an equitable and summary remedy for over-taxation. Upon the revision, therefore, the provisions in regard to the abatement of taxes were essentially altered. Ample powers were conferred upon selectmen to correct *any* errors of themselves or their predecessors, and as their duties were of a nature to render errors unavoidable, it was intended that the remedy against them should be uniform, and that they should not be subjected to the expense and trouble of defending actions of trespass.

Redress in the nature of appeal to the Common Pleas was therefore provided by the statute of 1842, which, while it gives the complainant such a judgment " as justice may require," at the same time was designed to protect selectmen acting uprightly in the discharge of an embarrassing official duty from the vexatious suits of that very contemptible class of men found in every community, who use every means to evade the payment of their fair proportion of the public charges. The policy of legislation has recently been to take away the harshness of the common-law modes of redress and to protect the interests of defendants as well as plaintiffs, by substituting equitable remedies.

3. We contend, that if any action can be maintained upon these facts, it must be *case* and not *trespass.*

By § 12, ch. 180, Rev. Stat., it is provided, that " an action on the case and no other, shall be commenced against any sheriff, deputy-sheriff, coronor, *or other officer,* for any damages arising from any default or misconduct in his office."

The defendants here were *officers*, and the case shows that the plaintiff has no other cause of action against them than their " default or misconduct" in their " office." Being selectmen, *as* selectmen they over-taxed him, or rather they issued a warrant for too large an amount.

In *Hills* v. *Hoyt*, (Strafford County, December term, 1846,) in an action of trespass *de bonis asp.* against a sheriff who took property not the debtors, it was held, that this statute did not apply, and for good reason, because the plaintiff was no party to the process. As to him, the act was not official. A stranger took his property, having no appearance of process against him, and the plaintiff might well treat him as a stranger.

This distinction is obvious and is well illustrated by Chancellor *Kent*. " If a marshal of the United States, under an execution in favor of the United States against A., should seize the person or property of B., then the *State* courts have jurisdiction to protect the person and property so illegally invaded." 1 Kent's Com. 410. If the process were against B., it would be otherwise.

Here there was an official relation between the parties. The defendants were bound by their oath of office to assess a tax against the plaintiff. It cannot surely be argued, that none but acts strictly legal, can be official, and that whenever selectmen do any thing amiss, their act although within the general scope of their duties, purporting to be official, under their hands and seal as officers, may nevertheless be treated as unofficial. Such argument must lead to the absurdity that there can be no such thing as " default or misconduct in office," and so the statute be made void. Nor can it be contended that selectmen are not *officers*. They are so styled everywhere in the statute. Chapter 34 of the Revised Statutes, which provides for the election of selectmen, has for its title, " Of the choice of town *officers*."

On a former trial between the plaintiff and the collector, this point was raised but not decided. It was then suggested, that it had before been decided, but no case except that of *Hills* v. *Hoyt*, was found analogous to it. It was there contended, that the provision of the statute was designed only to be applied to

Osgood *v.* Blake.

the case of sheriffs and the like, and to remedy some special grievance suffered by bringing actions of debt against them. But we believe both the letter and spirit of the act apply to this case, and have no fear that the Court will bring themselves within the condemnation of those who " set aside the law by their traditions."

*Stickney & Tuck*, for the plaintiff. The position which we take is, that the town-meeting, at which · the defendants were chosen selectmen, and James Welch collector, and the money was voted to be raised, was illegal and its proceedings void ; and that the proceedings of the defendants in assuming to act as selectmen in assessing the taxes and committing them with their warrant to the collector for collection, were illegal and void, and gave to Welch no authority in law to collect said taxes or to arrest the plaintiff for the non-payment of the tax assessed against him. We contend, that the town-meeting was illegal :

1. Because the warrant calling the meeting was not posted up at least fifteen days before the day of the meeting.

2. Because a copy of the warrant was not posted up at the place of meeting.

The Rev. Stat. ch. 32, § 40, provides, that the selectmen shall post up an attested copy of such warrant at *the place of meeting* and a like copy at one other public place in town, *fifteen days* before the day of meeting. Rev. Stat. § 25, ch. 1, provides, that when time is to be reckond from any day, &c., the day when such act is done shall not be included in such computation.

In this case the copies of the warrant were posted up on the Monday two weeks before the day of the meeting which was on Tuesday. Excluding in the computation Monday, the day on which they were posted up, and there would be only fourteen days that the copies were posted up before the day of the meeting. This was insufficient. To make the meeting legal they should have been posted up fifteen days before the meeting, as the statute requires. *Nelson* v. *Pierce et al.* 6 N. H. Rep. 194 ; *Cardigan* v. *Page*, 6 N. H. Rep. 182 ; *Saxton* v. *Nimms et al.*

14 Mass. 320 ; *State* v. *Williams*, 12 Shep. Rep. 61 ; *Thayer* v. *Stearns et al.* 1 Pick. 112.

The second objection to the meeting is, that no copy of the warrant was posted up at the place of meeting within the meaning of the statute. A copy was posted up on the inside of the door where it could not be seen and read by those outside, and the door was then locked and kept locked until the meeting. This was not such a posting up as the statute requires. The object of the statute is to give notice of the meeting. Posting up where it cannot be seen gives no notice and is the same as if it was not posted up at all.

It is incumbent upon the defendants, in order to make out their justification, to show that all the requisitions of the statute have been complied with ; that they were lawfully chosen selectmen and were authorized to assess the tax against the plaintiff, and that Welch was collector. So held in *Tucker* v. *Aiken et als.* 7 N. H. Rep. 131, and cases there cited. The town-meeting not being warned as required by law, all the proceedings at the meeting were illegal and void.

Trespass is the proper and usual action in such cases. *Walker* v. *Cochran et al.* 8 N. H. Rep. 166 ; *Pike* v. *Hanson et al.* 9 N. H. Rep. 491 ; 11 N. H. Rep. 141 ; 13 N. H. Rep. 342.

It is said, in defence, that two of the defendants were selectmen by virtue of their election in 1843, and had authority as such to assess a tax upon the plaintiff, and issue their warrant for the collection. In support of this they rely upon Rev. Stat. ch. 34, § 6. Our answer to that is, —

1. That such is not the construction to be put upon that statute ; it does not mean that they are to hold their offices indefinitely, during life, if no others are chosen in their place. The language is, "All town-officers shall continue in office until the next annual meeting for the choice of town-officers, and until others shall be chosen and sworn in their stead." The fair construction to be put upon that is, that they are to continue in office until others are chosen and sworn in their stead at the next annual meeting. If those words were not used, the authority of the selectmen would cease as soon as the day of the meeting

Osgood *v.* Blake.

occurred. It was to guard against such a result, that those words were used. That this is the true construction to be put upon the statute, we think will appear evident when we consider the whole statute upon that subject. Sec. 1, ch. 32, provides, that the annual meeting of every town shall be holden on the second Tuesday of March annually, *for the choice of town officers.* Chap. 34 provides, that every town at the annual meeting, shall choose selectmen and other officers, who shall continue in office until the next annual meeting, and until others are chosen in their stead. These statutes show that the object and intention of the law was, that the elections should be annual, and the law cannot be evaded by neglecting to choose. If they hold over one year, they will, upon the same principle, twenty years, if no others are chosen in their stead. Sec. 1, ch. 36, provides for filling vacancies in town offices, "when no annual meeting shall have been holden for the choice of town offices, or no choice has been made," "the town may choose such officers at any legal meeting for that purpose;" clearly implying that when there has been no annual meeting or no choice made at the annual meeting, there is a vacancy in the office.

A second answer to this part of their defence is, that if the defendants were selectmen by virtue of their election in 1843, they had no right to assess and collect the tax of the plaintiff, because there was no legal vote of the town authorizing the tax. The town-meeting being illegal, the vote raising the money, to pay which the tax was assessed, was illegal. It is necessary that there should be a legal vote raising the money in order to justify the selectmen in assessing and collecting a tax. *Pickering* v. *Pickering et al.* 11 N. H. Rep. 141; 7 N. H. Rep. 209. Selectmen cannot assess any tax, unless they are authorized by law or a vote of the town to do so. *Stetson* v. *Kempton et al.* 13 Mass. 272; 15 Mass. 144; *Philbrook* v. *Kennebec,* 5 Shep. 196; *Walker* v. *Cochran et al.* 8 N. H. Rep. 166; 13 Mass. 272; 15 Mass. 144; *Brackett* v. *Whidden,* 3 N. H. Rep. 20. The selectmen assumed to act under their election of 1844, and cannot fall back on their election of 1843. James Welch was not collector, and if every thing else were regular, that would be fatal.

.Another ground of defence is, that the plaintiff's only remedy was by an application for abatement, under Rev. Stat. ch. 44. Our answer to this objection is, that the principle contended for applies only to cases of overvaluation or overtaxation, and not to cases where the assessment of the tax is illegal. The cases cited by the defendants from 1 N. H. Rep. 399, and 4 ibid. 527, do not apply to this case. What we complain of is, that the selectmen have done what they had no authority in law to do. They have illegally assessed a tax against the plaintiff and caused him to be imprisoned for not paying it. Their proceedings being void, do not protect them. There can be no abatement in such case. It is not a proper case for abatement. The plaintiff does not complain that the defendants have overtaxed him, but that they have illegally taxed him.

We think the authorities abundantly sustain this position. *Walker* v. *Cochran et al.* 8 N. H. Rep. 166; *Stetson* v. *Kempton*, 13 Mass. 272; *Liby* v. *Burnham*, 15 Mass. 144; *Little* v. *Merrill et al.* 10 Pick. 543; *Preston* v. *City of Boston*, 12 Pick. 7; *Boston and Sandwich Glass Co.* v. *City of Boston*, 4 Met. 181; *Boston Water Power Co.* v. *City of Boston*, 9 Met. 199. In none of these cases was it ever pretended that the proper remedy against an illegal tax, was an application for an abatement. The decisions were based upon the principle, that the proceedings in assessing and collecting the tax were void, and did not protect the officers. Though our statute authorizes an application for an abatement of taxes and an appeal in certain cases, yet it was never understood or intended to apply to the case of an illegal tax. In such case there is nothing to protect the selectmen. They have not acted according to law, and it is just the same as if they had acted without any authority whatever.

If a person may apply for the abatement of an illegal tax, it does not follow by any means, that that is his only remedy. A man may have concurrent remedies for the same injury. That statute was not intended to take away the common-law remedy by action in case of an illegal tax. There is nothing in the statute providing that an application for abatement shall be the only

remedy in such cases. Sec. 16, ch. 45, provides, that collectors of taxes shall not be liable to any suit or action by reason of any irregularity or illegality of the proceedings of the town or of the selectmen. Now, if it had been the intention of the legislature to extend the same exemption to selectmen, it would have been done undoubtedly in express terms, as it is done in Massachusetts. Without that statute, collectors would be liable for collecting an illegal tax, and the fact that collectors are exempted and selectmen are not, goes strongly to show that it was not the intention of the legislature to exempt selectmen.

Another ground of defence is, that if any action can be maintained upon facts like these, it must be *case* and not *trespass*; and sec. 12, ch. 180, Rev. Stat. is referred to in support of that position. Our answer to that objection is, that the section refers only to executive officers; sheriffs, coroners, constables, and other officers of the same character, and not to such officers as selectmen. The object of the law was to protect sheriffs against the action of debt, which used to be brought against them. In *Hills* v. *Hoyt*, it was held, that trespass would lie against a sheriff who took property not the debtor's. But it is said by the defendants, in reference to that case, "A stranger took his property having no appearance of process against him, and the plaintiff might well treat him as a stranger." What is the difference between a void process and no process at all? One of the elements of a void process is that it affords no protection to the officer acting under it, and it is the same as no process at all in that respect.

It is contended by the defendants that the plaintiff can recover only nominal damages, if he can recover at all, and 9 N. H. Rep. 524, is referred to. We contend that the principles of that case do not apply to this. In that case the tax was legally assessed, and the plaintiff was bound to pay it; and, though the collector was not duly qualified, yet payment to him was a good discharge of the tax, so that it could not be again collected. In that case it is expressly held, that if the tax were illegal the plaintiff should recover the full amount.

EASTMAN, J.  The questions raised by this case require the examination of a subject, which has always been watched with much jealousy.  The power of taxation is one of the highest attributes of sovereignty, and affects the rights of the citizen as intimately as any other.  It is also one upon which the existence of a government in a great measure depends; and while courts feel themselves bound to give no countenance to frivolous objections on the part of the tax-payer, and to render all proper aid in carrying out the laws, they are also called upon to see that the rights of the citizen are not improperly invaded, nor his property taken without provision of law.

The annual town-meeting of Raymond, in 1844, was attempted to be called by that provision of the statute which enacts, that "the selectmen may address their warrant to the inhabitants of the town, qualified to vote in town affairs; in which case they shall post up an attested copy of such warrant at the place of meeting, and a like copy at one other public place in the town, fifteen days before the day of meeting."  Rev. Stat. ch. 32, § 4.  Two attested copies are to be posted up: one at the place of meeting, and one at some other public place in town.  The evident object of the law is, to have the notices of the meeting made as public as circumstances reasonably require, that all who are interested in the subject-matters contained in the warrant may have the privilege of attending the meeting, if they see fit.  The clause of the statute seems also to presuppose that the place of the meeting shall be a public one; for, in fixing upon the other place where the copy is to be posted, it speaks of some " other public place."

In the case before us, it appears that one of the copies was posted upon the inside of the door of the meeting-house where the meeting was to be held ; that the door was then locked, and kept locked till the day of the meeting.  Literally speaking, the statute was complied with by this manner of posting the copy, because the copy of the warrant was posted up at the place of meeting; but so far as the spirit of the act is to be regarded, or the inhabitants of the town were concerned, there might just as well have been no copy whatever posted up.  To recognize such

a course of procedure as a compliance with the statute, would be adopting a principle that might lead to a complete usurpation of power, on the part of town officers and their friends. By the law, as it now stands, " a town-meeting may be warned by the selectmen, when, in their opinion, there shall be occasion therefor." Rev. Stat. ch. 32, § 1. And the inhabitants of the town may be notified of the meeting by a warrant addressed to them, and copies posted, as is provided in sec. 4, above quoted. Now if one copy may be posted at the place of meeting on the inside of the door, and that kept locked, by the same principle the other copy may be posted at some other public place, on the inside of the door of some room, and that kept locked; and thus none would be informed of the meeting except the selectmen, and such particular friends as they chose to notify. In this way a secret meeting could be held, the old officers or their appointees elected, taxes could be voted, and yet the letter of the law be strictly complied with. It is not probable that such a state of things would long be tolerated without a revolution, nor is it by any means to be presumed that the selectmen contemplated any corrupt act by taking the course which they did; still a moment's reflection will show, that to hold such a warning to be legal would be virtually overriding the statute, and might lead to the most mischievous of consequences.

But there is still another objection to the warning of this meeting. The copies of the warrant were not posted up in due season. The law requires that they be put up fifteen days *before* the day of meeting. Rev. Stat. ch. 32, § 4. And the day on which they are posted up is not to be reckoned in the computation; for " when time is to be reckoned from any day, date, act done, or the time of any act done, either by force of law, or by virtue of any contract hereafter made, such day, date, or the day when such act is done, shall not be included in such computation." Rev. Stat. ch. 1, § 25. These copies were posted up on the Monday, two weeks before the Tuesday on which the meeting was to be held. Excluding the Monday, the day on which they were posted up, there remain but fourteen days before the day of meeting. In the case of the *Graf-*

*ton Bank* v. *Kimball et al.*, selectmen of Haverhill, decided about two years since, it is believed that this identical question was considered ; and that it was there decided that a warrant posted on Monday, two weeks preceding the Tuesday on which the meeting was to be held, was not in season, and that the doings of a meeting, held in pursuance of such a warrant, were illegal. This meeting, then, which was held in Raymond, in March, 1844, was illegal and void. All the officers that were then chosen held their offices without authority of law ; and no vote to raise money was binding upon the inhabitants of the town, or could be the proper and legal foundation for the assessment of any tax. Even should it be held that two of the selectmen were legally in office, by virtue of their election in 1843, — which question we shall not at this time stop to consider, — the difficulty is not obviated ; because the vote to raise the money to defray the charges and expenses of the town, was entirely illegal, and, as a necessary consequence, the tax assessed upon it equally so, for the selectmen could not assess a tax to raise money illegally voted. Or if the selectmen could in any way be regarded as officers *de facto*, that would not relieve them. Officers *de facto* are sometimes protected in doing legal acts ; but it has never been held that they could be justified in doing acts in themselves illegal. Even a collector *de facto*, notwithstanding the provisions of law in favor of that class of officers, is answerable for the value of property taken by him, when the tax has been illegally granted. *Cavis* v. *Robertson*, 9 N. H. Rep. 524. Without, therefore, entering into any discussion of the legality of the State, county, and school taxes, we must regard the tax assessed to defray the charges and expenses of the town for that year, as illegal and void. Have the defendants, then, any sufficient answer to this action ?

It is said that the action cannot be maintained, because the plaintiff's only remedy was by application for an abatement of his taxes ; that the Revised Statutes have enlarged the powers of the selectmen and court in this respect, and given an adequate remedy in all cases. A careful comparison, however, of the act of 1827, with the provisions of the Revised Statutes

Osgood *v.* Blake.

upon this subject, will, we apprehend, show that this opinion is founded in error. By the act of 1827, the selectmen were " empowered to abate *any* taxes, as well those assessed by their predecessors as by themselves, of *any* person applying for the same, provided sufficient reason for such abatement be shown." N. H. Laws, (ed. 1830,) p. 559, § 14. The provision of the Revised Statutes is in these words: " Selectmen, for good cause shown, may abate any tax assessed by them or their predecessors." Rev. Stat. ch. 44, § 1. Thus far, the statutes are in substance the same. There is no enlargement of the powers of the selectmen by the Revised Statutes. Both acts give them full power to abate in all cases, upon good cause being shown. The act of 1827, after giving this power to the selectmen, provides that, in case of their refusal to abate, application may be made to the Court of Common Pleas, " who are empowered to make such order in the premises as justice may require ; " *provided* the application be made within nine months after notice of the assessment ; " and *provided, further*, that the Court of Common Pleas shall not have power to abate any taxes, except as to such articles and matters as the selectmen, having the power of valuing, shall, in the judgment of said court, have overvalued, and as to sums set down by way of doomage for not giving an invoice, where the person doomed was unable to give an invoice." N. H. Laws, above quoted. This proviso, it will be observed, confines the application to the court to two classes of cases : first, where the selectmen, having the power to value the property, have overvalued it ; and, second, where a person has been doomed for not giving an invoice, when, in fact, he was unable to give one. Let us now see how the matter stands upon the Revised Statutes. The provision for applying to the Common Pleas sets forth, that if the selectmen shall neglect or refuse to make the abatement desired, " any person conceiving himself aggrieved, *having first complied with the provisions contained in sec. 4, ch. 41*, of this title, may, within nine months after notice of such tax and not afterwards, apply by petition to the Court of Common Pleas in the same county, who shall make such order thereon as justice shall require." Rev. Stat. ch. 44,

47 *

§ 2. The proviso of this section, it will be seen, is, that the applicant must have " complied with the provisions contained in sec. 4, ch. 41." This sec. 4, ch. 41, which is referred to, is as follows : " All persons liable to be taxed in such town shall exhibit to the selectmen, at the time and place appointed by them, or upon such personal application, a true account of the polls and estate for which they are there taxable, either in their own right or otherwise, on oath, if required by either of the selectmen, which oath either of the selectmen may administer." This section relates simply to the requisition upon the inhabitants to give in their inventories, and provides for the manner in which it shall be done. It embraces but one class of tax-payers, — those who give in their inventories. And hence, by the second section of chapter 44, can those only who have given in their inventories apply to the Court of Common Pleas for an abatement. All others are excluded from the right ; and those who are doomed, whether rightfully or wrongfully, have no remedy for an abatement beyond the will of the selectmen. The power of the court, then, is not coextensive with that of the selectmen, nor do the Revised Statutes provide an adequate remedy for all errors in the assessment of taxes. And it is at least a debatable matter, whether, in fact, the jurisdiction of the court upon this subject has not been abridged, instead of enlarged, by the operation of the Revised Statutes. Probably this plaintiff was doomed. Whether he applied to the selectmen or not for an abatement does not appear. It is not probable that he did, and if he had, it is equally probable that he would not have succeeded ; as there is no suggestion that his taxes, when compared with other citizens of the town, were disproportionate to his property. The Revised Statutes give him no power of appeal to the court, and his taxes could not, therefore, be abated. He would then have no remedy against an illegal and void tax, unless he could institute a suit against the selectmen. This he could do ; for where the court have no authority to order an abatement of taxes, a party is not remediless, and if he has been illegally taxed he can obtain redress by an action. *State v. Thompson*, 2 N. H. Rep. 238 ; *Walker v. Cochran et al.* 8 N. H. Rep. 166, 171.

But there is another brief but full reply to this position. This tax was entirely illegal and void ; and there is no requirement of law that compels a person to apply for an abatement of a tax that is assessed without authority of law, and void.

It is further contended, that inasmuch as the warrant contained assessments for the State, county, and school taxes, in addition to the sum raised for town purposes, it can be regarded as several warrants, some of which are legal, and some illegal ; and this view of the subject is attempted to be sustained upon the authority of *Brackett* v. *Whidden*, 3 N. H. Rep. 17. It also goes upon the assumption that the two selectmen of 1843 could hold over during 1844, and consequently assess those taxes that did not require any special action of the town. In *Brackett* v. *Whidden* it is said, that " a warrant authorizing a collector to collect several taxes, separately assessed, may be considered as several warrants to collect the several taxes respectively," so that the warrant may be good for some purposes, and bad as to others ; and this is the doctrine relied upon by the defendants to sustain them in this position. But it is further said in the same case, that although an arrest may be justified by virtue of the legal warrant, if nothing more be done, yet, if the person arrested be detained a moment by virtue of the illegal warrant, it is a trespass. This decision, then, so far from sustaining the views of the defendants, is a direct authority for the plaintiff upon the facts presented in this case, for here the plaintiff was detained in custody until he paid the whole tax assessed for all purposes, and the costs of his arrest. We think it clear that the defendants fail upon this point.

Another position taken by the defendant is, that the plaintiff has misconceived his form of action, and that he should have brought case and not trespass.

Prior to the passage of the Revised Statutes in 1842, this question came under the consideration of the Court several times, and might then be considered as settled. It was held that the party had his option to treat the wrongful assessment as the injury, and declare in case, or to treat the seizure of his property or the arrest of his person as the ground of action, and declare in

trespass. *Walker* v. *Cochran & al.* 8 N. H. Rep. 166; *Henry* v. *Sargent & al.* 13 N. H. Rep. 321. In the case of *Henry* v. *Sargent & al.* the suit was instituted against the defendants as selectmen. The plaintiff had been arrested and imprisoned, and subsequently paid the tax. Case was brought for the illegal assessment of the tax, and the exception was taken, that the action should have been trespass and not case. The Court held that the plaintiff had his election; that he might regard the wrongful assessment as the cause of the injury, and declare in case, or he might treat the arrest by the collector as the act of the selectmen, and declare in trespass.

But, it is contended that the Revised Statutes have changed the form of the remedy in actions of this kind, and that case is the only legal form to be adopted. The statute provides, that " an action on the case and no other shall be commenced against any sheriff, deputy-sheriff, coroner, or other officer, for any damages arising from any default or misconduct in his office." Rev. Stat. ch. 180, § 12. Probably the occasion of this statute arose out of the hardships that frequently befell sheriffs and their deputies, on account of actions of debt being brought against them, for escapes on final process, and other defaults where the action of debt was held to lie. By the common law, if a sheriff or other officer, undertaking to execute final process by arrest, should suffer an escape, or should neglect to make an arrest when the defendant was within his precinct, he was liable to an action of debt to the full amount of the original judgment, and was not permitted, as in the action of case, to go into any evidence of the situation and circumstances of the defendant in mitigation of damages: 2 W. Bl. 1048; 2 Term Rep. 126; 2 Johns. 454; 6 Johns. 271; 2 Chit. Rep. 454.

The fact that none but executive officers are specified in the section, would seem to indicate the object which the legislature had in view; that it was to leave open to the investigation of a jury all actions brought against such officers for any official default or misconduct. It could not be intended to shield them from illegal acts, which should be committed by them without process, or with void process. Thus in the case of *Hills* v. *Hoyt,*

Osgood *v.* Blake.

(Strafford, December term, 1846,) it was held, that an action of trespass might be brought against a sheriff for taking property not the debtor's. The taking of the property was an act done in his official capacity, but it was with no authority against the individual whose property was taken. It was not a default or misconduct within his office, but an illegal act without the sphere of his office. Whether this section of the statute is broad enough to include all officers not executive, and consequently selectmen of towns, it is not necessary here to decide; inasmuch as these defendants, having assessed an illegal tax, and issued an illegal and void warrant, come within the spirit of the decision in *Hills* v. *Hoyt*, the principle of which was carried out at the December term, 1849, in Belknap county, in the case of *Perley* v. *Parker & als.*, selectmen of Meredith. In that action trespass was brought, and the exception taken that it should have been case; the defendants relying upon the same clause of the statute that is made the foundation for the exception in this action. The Court held that trespass was a proper form of action, if the plaintiff chose to adopt it. The question there settled is believed to be precisely like the one raised here.

But the defendants further contend, that if they are liable at all in this action, it can be only for nominal damages, as the plaintiff has paid only his fair proportion of the taxes of that year. It may be true, that he has paid no more than his due proportion of the State, county, and school taxes, and so far the argument might perhaps hold good. But he has also, to gain his liberty, paid several dollars that were illegally assessed upon him, in pursuance of an illegal and void vote of the town. It cannot be held that where taxes are from their foundation illegal, that any payment by others can justify the arrest and imprisonment of an individual, because he declines to pay his fair proportion of such taxes. That is not the doctrine of *Cavis* v. *Robertson*, 9 N. H. Rep. 524, which is cited by the defendants. In that case, the defect consisted in the tax having been collected by the defendant, who was chosen collector and gave bond, but who had not taken the oath of office as prescribed by statute. He was collector *de facto*, but not *de jure*, and the

Court held, that inasmuch as the plaintiff had done no more than pay his legal tax, his damages against the collector ought to be nominal only. But it is expressly stated in the same case, that if the tax had been illegally assessed, the defendant would have been liable for the value of the property taken. Nor is the defendant's position sustained by the decision of *Henry* v. *Sargent & a.*, 13 N. H. Rep. 342, which is also cited by the defendants. A *quære* is there suggested upon certain facts, which are not parallel with those in this case, and consequently can have no bearing upon its decision.

If we should decide that the two selectmen of 1843 could hold over and legally act during 1844, the defendants might, perhaps, on trial before a jury, give in evidence the amount of the State, county, and school taxes, in reduction of damages. The. case, however, does not come before us upon the finding of a jury, but upon an agreed state of facts; and upon the further agreement, that judgment shall be entered for the plaintiff for the sum of $16.41 and interest, or for nominal damages; or for the defendants generally, according to the opinion of the Court upon the case. Holding that the action can be sustained, and that the defendants are liable for more than nominal damages, judgment must therefore be entered for the plaintiff, according to the agreement, for the sum of $16.41 and interest. *Henry* v. *Sargeant & a.* 13 N. H. Rep. 342.

*Judgment for the plaintiff.*