**UNITED STATES of America,**
**Plaintiff,**

v.

**Eleanor P. SINCLAIR, as Executrix of the Estate of Claude Beresford Pearce, et al., Defendants.**

**Civ. A. No. 4113.**

United States District Court,
D. Delaware.

Sept. 14, 1972.

Norman Levine, U. S. Atty., Wilmington, Del., and John M. Wood, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., of counsel, for plaintiff.

Bruce M. Stargatt, and Ben T. Castle, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., appearing specially for the Estate of Claude Beresford Pearce, and Robert H. Kapp, of Hogan & Hartson, Washington, D. C., of counsel.

James M. Tunnell, Jr. of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant, U. S. Steel Corp.

**1132**

McMillan, Binch, Toronto, Ontario, for defendants, The Royal Bank of Canada, and Roytor & Co.

## OPINION

LATCHUM, District Judge.

This case is presently before the Court on the motion[1] of the Estate of Claude Beresford Pearce ("the Estate") to quash the Court's order of April 30, 1971 which sequestered shares of common stock of the United States Steel Corporation ("U.S. Steel") registered in the name of the Estate. The Estate advances four grounds for the invalidity of the sequestration order: (1) The shares of stock which this Court ordered sequestered are in *custodia legis* of the Surrogate Court of Simcoe County, Ontario, Canada. (2) Since the decedent was domiciled in Ontario, both the Dominion of Canada and the Province of Ontario have an interest in the disposition of his estate, and to allow the United States to satisfy its estate tax claims through the use of a sequestration order without regard to the competing tax claims of Canada and Ontario would amount to an abuse of process. (3) The originally named defendant, the "Estate of Claude Beresford Pearce," is incapable of being sued and hence its property is not susceptible to sequestration. (4) The complaint fails to allege the nonresidency of the named defendant as required under the Delaware sequestration procedure.

The relevant facts are as follows: The decedent, Claude Beresford Pearce, a domiciliary of Canada, died on May 9, 1965, leaving a will in which Eleanor P. Sinclair and Paul Claude Pearce were named as co-executors of the Estate. Paul Claude Pearce has since died, leaving Sinclair as the sole executrix of the Estate. The principal asset of the Estate is several thousand shares of common stock in U.S. Steel, a Delaware Corporation. Pursuant to 26 U.S.C. § 2101, which imposes a tax on the estates of nonresident aliens to the extent that their property is situated within the United States,[2] the Government made a federal estate tax assessment against the Estate of $503,232.96. Payments and credits reduced the amount due to $268,-876.18[3] plus statutory interest.[4] Upon failure by the co-executors to pay the amount alleged to be due, the United States instituted this action on April 30, 1971 to satisfy its claim for federal es-

1. The Estate entered a special appearance in order to file the motion to quash the Court's sequestration order.

2. 26 U.S.C. § 2101(a) provides:
 "[A] tax . . . is hereby imposed on the transfer of the taxable estate . . . of every decedent nonresident not a citizen of the United States."
 In addition, 26 U.S.C. § 2104 provides:
 "(a) Stock in corporation.—For purposes of this subchapter shares of stock owned and held by a nonresident not a citizen of the United States shall be deemed property within the United States only if issued by a domestic corporation."

3. The Government assessed the value of the stock in U.S. Steel and Lukens Steel Corporation as $1,639,951.37 at the time of decedent's death. The then market value of the U.S. Steel stock was 52¾ per share and the value of the Lukens Steel stock was 71¼ per share. Since that time, the value of the stock was decreased sharply so that presently the U.S. Steel shares are valued at 29⅝ per share and the Lukens Steel shares at 20⅝ (closing prices on the New York Stock Exchange, September 11, 1972). Thus the value of the Estate's principal assets is less than one-half of its value at the time of decedent's death. In fact, the combined tax claims of the United States and the Province of Ontario exceed the total value of the estate.

4. 26 U.S.C. § 6601(a) provides:
 "If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at the rate of 6 percent per annum shall be paid for the period from such last date to the date paid."
 At the present time the accrued interest exceeds $125,000.

tate taxes. To prevent a transfer of the U.S. Steel stock from the Estate's name, the United States concurrently moved for, and was granted, a sequestration order by this Court under authority of 10 Del.C. § 366.[5] The complaint as originally filed named the Estate of Claude Beresford Pearce and U.S. Steel as co-defendants along with several others.[6] After the Estate moved to quash, on February 28, 1972 the United States filed an amended complaint naming Eleanor P. Sinclair, Executrix of the Estate, as a party defendant, and alleging her to be a nonresident of the State of Delaware.

In addition to the United States' estate tax claims, the Dominion of Canada and the Province of Ontario have also asserted tax claims against the Estate. The Estate continues to be administered for the purposes of succession and distribution under the decedent's will by the Surrogate Court of Simcoe County, Ontario, the domicile of the decedent.

First, the Estate maintains that since it is presently under the administration of the Surrogate Court, its assets including the U.S. Steel stock, are in *custodia legis* and therefore immune from the sequestration order entered by this Court. The doctrine of *custodia legis* has long been recognized in Delaware as creating an immunity to the seizure of property being administered in a decedent's estate by a Delaware executor. *See, e.g.* Marvel v. Houston, 2 Del. 349 (1838). The doctrine is based on the general principle that one tribunal will not interfere with the orderly administration and settlement of a decedent's estate by a probate court in order to avoid the diversion of assets from their lawful course of application. See: Cheff v. Athlone Industries, Inc., 233 A.2d 170, 174 (Del.1967); 2 Woolley On Del. Practice § 1173. Where, however, a decedent owns property situate in more than one state, one of which was his domicile, in order to protect local interests the situs non-domicile state may require that its own forum determine the disposition of the property within its borders, notwithstanding that the decedent's will is subject to probate in his domicile. New York Trust Co. v. Riley, 24 Del.Ch. 354, 16 A.2d 772, 785 (1940); 95 C.J.S. Wills § 352. Thus, where a decedent's property is located in different states, competing local interests may render the doctrine inapplicable. Applying this last mentioned principle on a multi-national scale, where property is situate in the United States, the United States' federal estate tax is a local interest relative to any foreign claims, and an American court may grant appropriate relief to protect that local interest regardless of other actions to be taken by a foreign court administering the estate. Thus, it can be seen that the potential applicability of the *custodia legis* doctrine in the instant case depends on whether the situs of the stock is the United States.

---

5. 10 Del.C. § 366 provides:

 "(a) If it appears in any complaint filed in the Court of Chancery that the defendant or any one or more of the defendants is a non-resident of the State of Delaware, the Court may make an order directing such non-resident defendant or defendants to appear by a day certain to be designated. . . . The Court may compel the appearance of the defendant by the seizure of all or any of his property, which property may be sold under the order of the Court to pay the demand of the plaintiff, if the defendant does not appear, or otherwise defaults. . . . [If the Court denies a motion to quash the order] such property shall remain subject to seizure and may be sold to satisfy any judgment entered in the cause."

 This remedy for seizure is available to the federal courts by virtue of Rule 64, F.R.Civ.P., which provides that all remedies for seizure of property, including sequestration provided by the law of the state in which the district court convenes, are available to the Court.

6. The other named defendants, who were alleged to possibly have some interest in the shares, were Gardiner, Watson, Ltd.; Royal Bank of Canada; and Roytor & Company.

■ Rule 64, F.R.Civ.P., under which this Court is authorized to use the Delaware sequestration procedure, provides that any federal statute will govern to the extent that it is applicable; and 26 U.S.C. § 2104(a) provides that, for purposes of federal estate taxation, shares of stock held in a domestic corporation by a nonresident alien of the United States shall be deemed property within the United States. Hence, for the purposes of this suit, the U.S. Steel stock is deemed to have its situs in the United States, and this Court, having jurisdiction over the stock,[7] may properly issue an order of sequestration to protect the tax lien of the United States, a legitimate local interest.[8] Consequently, the Court finds no merit to the Estate's first contention.

■ Second, the Estate contends that the Dominion of Canada and the Province of Ontario also assert tax claims against it, and for this Court to issue an order of sequestration without regard to these competing claims amounts to an abuse of process.

According to the terms of the Convention Between the Government of Canada and the Government of the United States for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to the Taxes on the Estates of Deceased Persons ("the Convention"), Canada has no interest in the sequestered shares of stock. According to Article V, § 1 of the Convention,[9] Canada must allow 100% credit against the estate tax owed to it by a decedent's estate for any estate tax imposed by the United States on property owned by the decedent having a situs in the United States. Under another Article of the Convention, the stock is expressly deemed to have a situs in Delaware within the United States.[10] Since the es-

---

7. In addition to the federal statute, 8 Del.C. § 169 provides that all stock in a Delaware corporation is regarded as having its situs in Delaware for purposes of jurisdiction and attachment (although not for purposes of *state* taxation). Also by virtue of a treaty between the United States and Canada relating to the priority of claims where property would be subject to estate taxes from both sovereigns, the situs of the shares of stock is deemed to be Delaware, the state of U.S. Steel's incorporation. Article II(f), Convention Between the Government of Canada and the Government of the United States of America for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to the Taxes on the Estates of Deceased Persons. U.S.T. 382, T.I.A.S. No. 4995, as reported in 2 C.C.H. Fed. Estate & Gift Tax Rep. ¶ 5425, at 6013.

8. The United States also argues that under the law of the Province of Ontario, the Surrogate Court lacks jurisdiction to dispose of the U.S. Steel shares of stock. It maintains that under the Surrogate Courts Act, Revised Statutes of Ontario 1970, c. 451, § 28, the Surrogate Court's jurisdiction is limited to property within the boundaries of the Province of Ontario. It also maintains that under Canadian case law intangible property held by a resident may nonetheless have a situs outside the Province and thereby be exempt from taxation under the Ontario Succession Duty Act, Revised Statutes of Ontario 1970, c. 449. The Attorney General for Ontario v. Fasken, [1935] O.R. 288 [1935] 3 D.L.R. 100. The United States' argument is that since the Ontario Surrogate Court by statute lacks jurisdiction over property situate outside the Province and since under case law the U.S. Steel stock is deemed to have a situs outside Ontario, the Surrogate Court lacks jurisdiction over the stock under Canadian law as well. The merits of this contention were not examined in view of the Court's decision on other grounds.

9. Article V, § 1 provides:
"Where either contracting State imposes tax by reason of a decedent being domiciled therein or being a citizen thereof, that contracting State shall allow against so much of its tax (as otherwise computed) as is attributable to property situated in the other contracting State a credit (not exceeding the amount of tax so attributable) equal to so much of the tax imposed by the other contracting State as is attributable to such property." U.S.T. 382, T.I.A.S. No. 4995, as reported in 2 C.C.H. Fed. Estate & Gift Tax Rep. ¶ 5425, at 6014.

10. *See* Note 7 *supra.*

tate tax imposed by the United States on the U.S. Steel stock exceeds the tax imposed by Canada on the entire estate,[11] there is no Canada estate tax due on the sequestered stock and therefore the Government of Canada has no interest in it.

As for the succession duty imposed by the Province of Ontario, it should be noted that if Ontario brought suit to enforce its tax claim in this Court, no constitutional provision would require this Court to entertain that suit.[12] Nor does the policy of the State of Delaware require such suits to be heard in its courts.[13] Thus, neither federal nor state law mandate this Court to entertain a foreign tax suit, and since the Court could properly refuse to recognize foreign tax claims even if brought before it directly, it can grant the relief sought by the United States here without considering a foreign state tax claim not formally before the Court. Therefore, the Court did not abuse the process of sequestration in granting the United States' application without considering the competing tax claims of Ontario.[14]

Third, the Estate asserts that the complaint originally filed by the Government named the "Estate of Claude Beresford Pearce" as a defendant, an entity legally incapable of being sued and hence whose property is not susceptible to sequestration.

The executor or administrator is ordinarily the proper and necessary party to a suit in which a decedent's estate is involved. 1 Woolley On Del.Practice § 133; 34 C.J.S. Executors and Administrators § 737. Where a complaint names as defendant a party who is incapable of being sued, the complaint must be dismissed as to that party. In the instant case the Government's original complaint named both the Estate and U.S. Steel as defendants and sought the seizure of shares of U.S. Steel stock owned by the Estate under authority of Delaware's sequestration procedure. Subsequently, the United States amended its complaint to name Eleanor P. Sinclair, Executrix of the Estate as a party defendant. The United States contends that Rule 15, F.R.Civ.P.,[15] permits the filing of an amended complaint as a matter of course, prior to the filing of a responsive pleading. The Estate contends that the amended complaint ac-

---

11. At the present time the estate tax and statutory interest assessed by the United States exceeds $390,000 while the tax imposed by Canada on the entire estate is less than $350,000.

12. *See* the opinion of Learned Hand in Moore v. Mitchell, 30 F.2d 600, 603–604 (C.A. 2, 1929), affirmed on other grounds 281 U.S. 18, 50 S.Ct. 175, 74 L.Ed. 673 (1930) (concurring opinion). As the Supreme Court stated in Milwaukee County v. M. E. White Co., 296 U.S. 268, 275, 56 S.Ct. 229, 233 80 L.Ed. 220 (1935), "[w]hether one state must enforce the revenue laws of another remains *an open question in this court.*" The Supreme Court has since affirmed that the enforcement of revenue laws of other states and foreign countries is still an open question. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 413–414, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). *See also* 21 C.J.S. Courts § 72.

13. "No statute in Delaware covers the situation [of enforcing the revenue laws of another state or a foreign country] and, in the light of the overwhelming weight of authority, this Court should not take the drastic step of accepting jurisdiction without an express mandate from those authorities which are entrusted with the power of handling interstate relations." City of Detroit v. Proctor, 5 Del.Super. 193, 61 A.2d 412, 416 (1948).

14. The United States also maintains that under Ontario law the succession duty can not be levied on property situated outside of Ontario. Succession Duty Act, Revised Statutes of Ontario 1970, c. 449 §§ 6–7, 21; and that Canadian case law would regard the stock as being situate outside of Ontario. *Fasken, supra,* note 8. This position was not considered in light of the Court's decision on other grounds.

15. Rule 15, F.R.Civ.P., provides:
"(a) Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served . . . .".

**1136**

tually seeks to add a new party and that Rule 21 [16] should govern, which requires leave of court even if filed before a responsive pleading is served. The Court is inclined to agree with the Government's argument, but even conceding the defendants' position to be correct, the Court has discretion under Rule 21 to add parties *at any time in the proceedings on such terms as are just*. Since the Court finds that no prejudice has resulted from the amendment, it will be permitted.

 Of more serious consequence is the Estate's contention that since there was a defect in the complaint at the time the sequestration order was applied for and granted, the order is likewise defective and cannot be cured retroactively under Delaware law. While concededly this Court is bound by Delaware law when a state-created seizure remedy is used,[17] it is not altogether convinced that a retroactive cure of this particular defect would be prohibited under Delaware law.[18] In any case, the Court is not required to make that de-

termination. Under Rule 64, F.R.Civ.P., any statutes of the United States govern these proceedings to the extent that they are applicable. Under 26 U.S.C. § 2203,[19] if an estate has no executor acting within the United States, then for federal estate tax purposes, any person in actual or constructive possession of property of the decedent within the United States shall be deemed an "executor". The designated executrix of the Estate for purposes of succession and distribution under Canadian law is Eleanor Sinclair, a resident of Canada not acting within the United States, and U.S. Steel, as a party in constructive possession of the decedent's property, is deemed the "executor" for purposes of this suit. Since U. S. Steel was a named defendant in the original complaint,[20] a proper party was sued with respect to the U.S. Steel shares and the Court's order of sequestration of those shares was valid.

Finally, the Estate contends that the sequestration order is fatally defective because the complaint failed to allege the nonresidence of the Estate.

16. Rule 21, F.R.Civ.P., provides:
"Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."

17. As this Court stated in Jacobs v. Tenney, 316 F.Supp. 151, 162 (D.Del.1970): "Litigants in this Court should be treated the same as litigants in the State Court when State provisions for service are used in this Court."

18. In Gluck v. Chashin, 210 A.2d 855 (Del.1965), the Delaware Supreme Court refused to permit an allegation of non-residency in an amended complaint to relate back to the original finding for the purpose of curing the defect in the sequestration order. The Court stated that the sequestration statute must be strictly complied with. On the other hand, in Yancey v. National Trust Co., 251 A.2d 561 (Del.1969), the Delaware Supreme Court permitted a sequestration order to stand which had mistakenly ordered the seizure of the defendants' individual property instead of property held by them in a fidu-

ciary capacity. The Court stated that the defect was only a technical one and not fatal since the property intended to be sequestered was in fact seized and no prejudice had resulted.

19. 26 U.S.C. § 2203 provides:
"The term 'executor' wherever it is used in this title in connection with the estate tax imposed by this chapter means the executor or administrator of the decedent, or, if there is no executor or administrator appointed, qualified, and acting within the United States, then any person in actual or constructive possession of any property of the decedent."

20. Although the complaint failed to identify the defendant U.S. Steel as the "executor" of the estate, it did disclose that the stock was held by the company in a fiduciary capacity in favor of the estate. The property intended to be sequestered was in fact seized and U.S. Steel was not prejudiced since it had sufficient notice of its liability so that the defect is merely technical and not fatal. *See* Yancey v. National Trust Co., note 18 *supra*.

As previously mentioned, the original complaint did not allege that the executrix of the Estate was a nonresident. Indeed, as discussed above, the original complaint failed even to name the executrix as a party defendant. The Court granted the order of sequestration based on the original complaint. Thereafter the complaint was amended to name the executrix as a party defendant and to allege her nonresidence. 10 Del.C. § 366 provides "[i]f it appears in any complaint filed in the Court of Chancery that the defendant . . . is a non-resident of the State of Delaware, the Court may make an order directing such non-resident defendant . . . to appear. . . . The Court may compel the appearance of the defendant by the seizure of all or any part of his property . . .". This statute merely requires that the nonresidence of a defendant be apparent upon reading the complaint. In Gluck v. Chashin, 210 A.2d 855 (Del.1965), the Delaware Supreme Court held that a failure to set forth the defendant's non-residence in the complaint was fatal to an application for an order of sequestration pursuant to that complaint. The Supreme Court stated that the precise requirements of the statute must be complied with. In that case, the complaint itself gave no hint of nonresidence; it was first asserted in the affidavit accompanying the application for sequestration. On the other hand, in the instant case, the complaint itself alleged that the Estate was being administered outside the jurisdiction of the Court. This allegation appears to meet the literal requirement of the statute. While the word "nonresident" is not used, the lack of personal jurisdiction over the Estate is apparent upon reading the complaint. Furthermore, in Wife v. Husband, 271 A.2d 51 (Del.Ch. 1970), the Delaware Court of Chancery held that the language of the sequestration statute is not so strict as to require the use of the word "nonresident"; it is sufficient if the complaint discloses non-residency. In light of the foregoing, this Court finds that the original complaint "disclosed" the nonresidency of the Estate sufficiently to meet the requirements of the Delaware sequestration statute.

The Estate also contends that the nonresidence of the executrix could not have been disclosed in the original complaint since she was not named in the original complaint. That complaint, in which the Estate was named as a party defendant, stated that the Estate was "administered by Joseph J. Minsky, whose address is: Suite 433, 12 Richmond Street, East Toronto 1, Ontario, Canada, which is outside the jurisdiction of this Court." This language disclosed that the legal representative of the Estate was outside the jurisdiction of the Court. The United States' failure to name the executrix herself as a nonresident was a mere technical defect which it subsequently corrected in its amended complaint. The Supreme Court of Delaware subsequent to Gluck v. Chashin, *supra*, has held that mere technical errors causing no prejudice to the defendants do not affect the validity of the sequestration order. Yancey v. National Trust Co., 251 A.2d 561 (Del.1969).[21] In the present case, no prejudice resulted to the executrix inasmuch as she received actual notice of the complaint even though not mentioned in it by name. Indeed, in response to this actual notice received, she has filed an affidavit in support of the Estate's present motion. No prejudice having been shown, the defect in the original complaint is not fatal to the order of sequestration.

21. *See* Note 18 *supra.*