**TERUKUNI KAIUN KAISHA, LTD., Plaintiff,**

v.

**C. R. RITTENBERRY AND ASSOCIATES, INC., Defendant.**

**No. 78 Civ. 1086 (RLC).**

United States District Court, S. D. New York.

July 27, 1978.

Healy & Baillie, New York City, for plaintiff; Raymond A. Connell, Hastings on the Hudson, N.Y., of counsel.

Dickstein, Shapiro & Morin, New York City, Pray, Scott, Williamson & Marlar, Tulsa, Okl., for defendant; Seymour Glanzer, Washington, D.C., Arthur J. Galligan,

New York City, Joel B. Kleinman, Washington, D.C., Roger R. Scott, Tulsa, Okl., of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Defendant C.R. Rittenberry and Associates, Inc. ("Rittenberry") moves, under F.R. Civ.P. 12(b)(2) and (3) and 28 U.S.C. § 1406(a), for dismissal or transfer of the action to the Northern District of Oklahoma on the grounds that the court lacks personal jurisdiction over the defendant and that venue is improper in this district, or alternatively, under 28 U.S.C. § 1404(a), for transfer to Oklahoma on the grounds that the convenience of parties and witnesses and the interest of justice so require.[1] It is unnecessary to resolve defendant's contentions regarding jurisdiction and venue because, for the reasons discussed below, the action should be and is transferred under the discretionary provisions of 28 U.S.C. § 1404(a).

*Facts*

Terukuni Kaiun Kaisha, Ltd. ("Terukuni") is a Japanese corporation with an office in Tokyo. Its business is, or was,[2] the operation of oil tankers in world trade, and as part of that business, it chartered or subchartered its vessels on a time charter (long-term) basis to other entities. Rittenberry is an Oklahoma corporation with its office in Tulsa, Oklahoma. It is a middleman in the domestic and international oil markets, buying from producers and selling to refiners. It is also involved in the transportation of some of the oil it purchases, and when the transportation is across oceans, it charters tankers on a spot charter (short-term) basis. In support of its motion, Rittenberry submits the affidavit of Bruce Kahler, the president of K & E Transport Lines, Ltd. ("K & E"), discussed below, and a former and perhaps present employee of Rittenberry. Kahler asserts that in 1972 and 1973 it was his responsibility to secure spot charters for Rittenberry. In 1973, according to Kahler, he became convinced that the market rates for spot charters were going to increase, which would make it profitable to secure tankers on a long-term basis and recharter them short-term at a higher rate. In order to take advantage of this prospect, a new corporate entity, K & E, was established in May, 1973. K & E is a Liberian corporation headquartered in the same offices as Rittenberry in Tulsa.

1. One day after the instant motion was filed, plaintiff filed an amended complaint which adds as a defendant Charles R. Rittenberry, assertedly the president, chairman and dominant shareholder of C.R. Rittenberry and Associates, Inc. As I understand the claim against Charles Rittenberry, it is that he is personally responsible for the "obligations" of Rittenberry and Associates and/or K & E Transport Lines Ltd., discussed below. Plaintiff has not moved to amend its complaint, but since no answer has yet been filed, plaintiff presumably relies on F.R.Civ.P. 15(a), which permits an amendment as of right at any time before the answer is served. However, F.R.Civ.P. 21 directs that a party may be added to an action "by order of the court." It is unclear whether a party may be added without order of the court by an "as of right" amendment to the complaint. *Compare, e. g., Keller v. University of Michigan,* 411 F.Supp. 1055, 1057 (E.D.Mich.1974), *and Gordon v. Lipoff,* 320 F.Supp. 905, 922–23 (W.D. Mo.1970), *and* 3 Moore's Federal Practice § 15.07[2] at 858 *with McLellan v. Mississippi Power & Light Co.,* 526 F.2d 870, 872–73 (5th Cir. 1976), *modified on other grounds,* 545 F.2d 919 (1977), *and United States v. Sinclair,* 347

F.Supp. 1129, 1135–36 (D.Del.1972), *appeal dismissed sub nom. United States v. Estate of Pearce,* 498 F.2d 847 (3d Cir. 1974) *and* 3A Moore's Federal Practice § 21.02 n. 2 at 21–4. It is unnecessary in this case, however, to decide whether Charles Rittenberry is already a party-defendant or whether the court should order him to be added as a defendant on its own initiative, F.R.Civ.P. 21, for the presence of Charles Rittenberry as a defendant would change neither the analysis nor result reached herein. Since this case is to be transferred to the Northern District of Oklahoma, I leave the resolution of this issue to that court.

2. The parties dispute whether Terukuni is presently an ongoing business enterprise. Rittenberry claims that plaintiff is in "Japanese bankruptcy," Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss or in the Alternative to Transfer, p. 19; Terukuni denies this. Memorandum in Opposition to Motion of Defendant to Dismiss the Complaint and in Opposition to Defendant's Alternative Motion for an Order Changing Venue ("Memo in Opposition"), p. 30.

On June 14, 1973, pursuant to this plan, K & E chartered the tanker Paloma Del Mar from plaintiff for a three year period. But in the fall of that year, as a consequence of the Arab oil embargo, the bottom fell out of the spot charter market. Assertedly as a result, in November, 1974, K & E breached its contract with Terukuni and returned the Paloma Del Mar to plaintiff. Kahler also claims that at that time, K & E had become insolvent due to heavy losses and ceased to do business altogether.

Pursuant to the charter party, Terukuni instituted arbitration proceedings against K & E in New York, and on September 28, 1976, the arbitrators awarded Terukuni $12,137,546.31. By order dated February 28, 1977, Judge Cannella of this court confirmed the award and directed judgment for Terukuni against K & E for the sum of $12,430,842.64 (the amount of the arbitration award plus interest).

On February 3, 1978, according to plaintiff, K & E filed a petition in bankruptcy in the Northern District of Oklahoma. Plaintiff, thus stuck with a massive judgment in its favor against an insolvent organization, instituted the present action on March 10, 1978.

Terukuni's complaint alleges in essence that K & E is a sham corporation, without a true identity of its own, established by Rittenberry so that it could carry on its business of spot chartering tankers through an underfunded shell, thereby isolating Rittenberry from any of the risks of its new enterprise. The primary thrust of the complaint is that Rittenberry is responsible for the judgment against K & E, presumably on the theory that it is appropriate to pierce the corporate veil between the two corporations under the circumstances in this case.[3] Plaintiff demands judgment against Rittenberry for the same amount as the judgment against K & E granted by Judge Cannella.

*The Motion to Transfer*

"The burden of persuasion regarding the appropriateness of a discretionary transfer lies with the movant." *Star Lines, Ltd. v. Puerto Rico Maritime Shipping Authority*, 442 F.Supp. 1201, 1207 (S.D.N.Y.1978) (Carter, J.).[4] In this case, defendant has met that burden.

In terms of the interests of the parties themselves, it is obvious that it would be far more convenient to litigate this matter in Oklahoma than here. As noted, plaintiff is a foreign corporation, and to the extent that any of its employees or records will play a part in the trial of this action, it will not be significantly more difficult for plaintiff to transport these employees or records to Tulsa, where the District Court for the Northern District of Oklahoma sits, than to New York.[5] On the other hand, Rittenberry is an Oklahoma corporation with its principal and perhaps only office in Tulsa. Further, there is no indication in the record that its employees travel extensively in the

---

3. Plaintiff argues that, in addition to stating a claim against Rittenberry on the judgment against K & E, the complaint also states a claim "for fraud in connection with the execution and performance of a maritime contract." Memo in Opposition, p. 6. I will assume for purposes of this opinion that the complaint does state such a claim for relief. However, as indicated below in note 7, the analysis of the propriety of transfer does not differ appreciably under either theory of liability. Consequently, where the theory of the complaint is relevant to determination of the transfer question, discussion in the text focuses on the predominant theory of the complaint.

4. The burden is placed on the movant-defendant because the plaintiff's choice of forum in and of itself is ordinarily entitled to some deference. The deference owed, however, is less where plaintiff brings suit outside its home forum. *See, e. g., Pesin v. Goldman, Sachs & Co.*, 397 F.Supp. 392, 394 (S.D.N.Y.1975) (Bonsal, J.); *Societe Commerciale de Transports Transatlantiques v. S. S. "African Mercury"*, 366 F.Supp. 1347, 1350 (S.D.N.Y.1973) (Tenney, J.).

5. The convenience of a party's *counsel* is normally not a significant factor to be weighed on a motion to transfer. *See, e. g., Vaughn v. American Basketball Association*, 419 F.Supp. 1274, 1277 (S.D.N.Y.1976) (Lasker, J.); *Scheinbart v. Certain-Teed Products Corp.*, 367 F.Supp. 707, 710 (S.D.N.Y.1973) (MacMahon, J.); *Faigenbaum Machinery, Inc. v. Scott & Williams, Inc.*, 344 F.Supp. 1267, 1272 (S.D.N.Y.1972) (Weinfeld, J.).

course of performing defendant's business. Litigating this suit in New York would be an obvious inconvenience to Rittenberry.[6]

Consideration of the witnesses who will be called and the documents that will be put into evidence also dictates that the action should be transferred. This suit is an attempt to impose upon Rittenberry a liability incurred by its at least nominally distinct subsidiary, K & E. There is no issue in this case concerning the formation *per se* of the underlying contract between Terukuni and K & E, nor about the contract's performance, nor about its breach, nor about the damages resulting to Terukuni from that breach. The issue is whether the relationship between Rittenberry and K & E is such that it is appropriate, under the applicable standards, that Rittenberry be held responsible for the obligations nominally undertaken by K & E. This action will thus focus almost exclusively on the business dealings and corporate structures of the two entities, and the interrelationship between them. The vast majority of the evidence bearing on this issue is located in Tulsa. Both corporations are headquartered there. All their records are there; indeed, Kahler asserts that all of K & E's records are in the possession of the trustee in bankruptcy in the proceeding in Tulsa. None of these corporations' employees, who could testify about the realities of the day-to-day interrelationship between the companies, are known to be in New York, while many reside in Tulsa. In addition, Rittenberry points out that its auditors and the bank that both it and K & E use are in

Tulsa. Many of these potential witnesses are beyond the subpoena power of this court, but would be subject to the jurisdiction of the court in Tulsa—an important factor in the determination of a transfer motion. *See, e.g., Commercial Solvents Corp. v. Liberty Mutual Insurance Co.*, 371 F.Supp. 247, 250 (S.D.N.Y.1974) (Stewart, J.); *Glickenhaus v. Lytton Financial Corp.*, 205 F.Supp. 102, 105–06 (D.Del.1962). And whether the compulsion of a court is necessary to secure the testimony of these witnesses, it is nonetheless clear that trial of this action in New York would generate far more inconvenience than trial in Tulsa, for it is highly unlikely that the issue in this case could be determined without consideration of most if not all these sources of evidence.[7]

The only evidence located in New York that bears on the issue of the case is the testimony and records of Joseph Conigliaro, an employee of Charles R. Weber Co. ("Weber"). Weber, it appears from the papers, is a New York charter broker firm which acts as an intermediary between lessors and lessees of vessels, or perhaps as an "agent" of one of the parties in securing a charter through contact with a different broker representing the other party. Both Rittenberry and K & E used the offices of Conigliaro for much if not all of their chartering activity. Conigliaro has testified extensively in a supplementary proceeding relating to the enforcement of Terukuni's judgment against K & E, discussed above, and in *Nippon Yusen Kaisha, Ltd. v. C. R. Rittenberry & Associates, Inc.*, No. 75 Civ.

6. The fact that Rittenberry agreed to arbitration in New York of disputes arising under charter agreements in several charter documents submitted to this court does not weaken this conclusion. These printed standard forms generally provided only two choices for the place of arbitration—New York and London. That Rittenberry agreed to arbitrate in New York rather than London says nothing about the relative convenience to Rittenberry of litigation in New York rather than in Tulsa.

7. The evidence that would be relevant to plaintiff's other claim, see note 3, *supra*, "for fraud in connection with the execution and performance of a maritime contract" will be the same as that germane to the claim on the judgment.

While it could be argued that examination of a fraud claim would focus more on the actual execution and performance of the contract, it is clear that in this case the determinative issue under either theory is the relationship between Rittenberry and K & E. The alleged "fraud" here is that K & E was an underfunded sham corporation established so that Rittenberry could engage in the spot-chartering business without financial risk. Complaint, ¶ 7; Memo in Opposition, pp. 6–7. These are the same factual allegations which underlie the claim on the judgment. Thus, the factual determinations to be made under both theories are the same.

936–IH (C.D.Cal., filed March 17, 1975), an action which Terukuni alleges was brought by another judgment creditor of K & E. Plaintiff argues that Conigliaro's testimony demonstrates the true nature of the Rittenberry-K & E relationship and shows K & E to be the sham corporation that plaintiff claims it to be.

There is no doubt that Conigliaro's testimony would be highly relevant to this case and that plaintiff intends to rely heavily upon it. But however critical the testimony may be, the convenience of this one witness simply does not outweigh the fact that all other potential sources of testimonial and documentary proof are to be found in or near Tulsa.[8] The trial of this action would be both more convenient and less costly if it were had in Oklahoma. Terukuni does rightly point out that Conigliaro could not be compelled to give live testimony in Tulsa.[9] The desirability of live testimony is not to be underestimated. Nonetheless, the difficulty in this case appears to be more theoretical than real, for Conigliaro is apparently willing to testify voluntarily outside New York, as the deposition he gave in *Nippon Yusen Kaisha, Ltd. v. C. R. Rittenberry & Associates, Inc., supra,* was taken in Los Angeles, California. See Affidavit of Raymond Connell in opposition to defendant's motion, Ex.C. In view of this circumstance, the fact that some witnesses will be beyond the subpoena power of the court wherever the trial may be held, see note 9 *supra,* and the fact that Conigliaro's

testimony could, if necessary, be secured by deposition in New York, consideration of the convenience and availability of witnesses and documents, on balance, favors transfer to Tulsa.

One other circumstance indicates the propriety of transfer. There is a substantial question whether C.R. Rittenberry is subject to the jurisdiction of this court.[10] Terukuni attempts to predicate jurisdiction on several theories. First, plaintiff argues that Rittenberry has consented to suit in New York in light of the fact that its subsidiary, K & E, consented to the entry in New York of the judgment that this suit is based upon. Second, Rittenberry is said to be "doing business" in New York so that it is subject to suit here on any cause of action, N.Y.C.P.L.R. § 301 (McKinney), because it used Weber, the charter broker in New York, to secure most of its tanker charters. Lastly, it is urged that this suit "arises from" a Rittenberry "transaction of business" here, N.Y.C.P.L.R. § 302(a)(1) (McKinney), on the ground that the underlying Terukuni-K & E charter was negotiated through the offices of Weber and that Rittenberry is responsible for the acts of the K & E "shell".

There is a serious question about the theoretical soundness of each of these jurisdictional arguments.[11] Moreover, even if these arguments are conceptually sound, significant discovery and/or a hearing would be required before any of them could be accepted.[12] Thus, if the action is not

8. Terukuni also names several other Weber employees who it claims are also familiar with the chartering activities of Rittenberry and K & E. It certainly appears, however, that Conigliaro is the Weber employee who is most familiar with these two companies. The testimony of other Weber employees in all likelihood would be merely cumulative to that of Conigliaro.

9. As noted above, however, many witnesses in Tulsa are outside the jurisdiction of *this* court.

10. Rittenberry also challenges the propriety of venue in this district, but in light of the result I reach here, I need not consider the issue.

11. There is some doubt, for example, whether use of a New York charter broker, servicing many clients at the same time, to secure contracts that are not to be performed in New York, constitutes the doing of business in New York, *see Fikaris v. Atlantic Oil Carriers,* 138 N.Y.S.2d 896 (Sup.Ct.N.Y.County 1955), or, for that matter, the transaction of business. A final answer to this question would depend upon an analysis of the functions that Weber performed for Rittenberry and/or K & E.

12. With regard to Terukuni's first and third jurisdictional arguments, it would be necessary to develop a sufficient factual record to determine whether, applying the appropriate standard, the acts of K & E can be imputed to Rittenberry for jurisdictional purposes. Similarly, the second and third arguments would require exploration of the role of the charter broker in the tanker charter business. See note 11, *supra.*

transferred, it will be necessary for the parties and the court to expend substantial efforts on a preliminary issue that would be absent from an action in Oklahoma. In addition, since jurisdiction in New York is problematic, these efforts may well turn out to be wasted ones, as the result could be that the action must be dismissed or transferred anyway. Prosecution of this action in Oklahoma sooner rather than later will avoid this risk of squandered energies. *See Clayton v. Swift & Co.*, 132 F.Supp. 154 (E.D.Va.1955). *See also Phillips v. Baker*, 121 F.2d 752, 756 (9th Cir.), *cert. denied*, 314 U.S. 688, 62 S.Ct. 301, 86 L.Ed. 551 (1941). Under these circumstances, transfer, which would obviate the jurisdictional difficulty, would serve the interest of justice.

Because the interests of the parties, witnesses and justice would be advanced by suit in Oklahoma, it is appropriate to transfer this action there. There is no question but that the action "might have been brought" in the Northern District of Oklahoma, 28 U.S.C. § 1404(a), as venue is proper and jurisdiction exists there since Rittenberry is headquartered in Tulsa. Consequently, the action is transferred to the Northern District of Oklahoma.[13]

IT IS SO ORDERED.

---

**13.** It is, of course, unnecessary to determine whether this court has jurisdiction over defendant because a lack of *in personam* jurisdiction is no bar to the transfer of an action under 28 U.S.C. § 1404(a). *Corke v. Sameiet M. S. "Song of Norway"*, 572 F.2d 77 (2d Cir. 1978).